Gordon *v.* Trovato, Appellant.

Argued November 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Frank A. Orban, Jr.*, for appellant.

*William F. Patterson*, for appellee.

OPINION BY PRICE, J., April 22, 1975:

The appellant, Charlotte Trovato, has filed this appeal from an Order of the Court of Common Pleas of Somerset County, Civil Division, entered March 14, 1974, denying appellant's motion for a new trial.

The case stems from a traffic accident which occurred in Windber Borough, Somerset County, on or about August 16, 1969. Involved is a trespass action for appellee's personal injuries arising out of a collision between his motorcycle and appellant's automobile. Appellee was travelling west on Jefferson Avenue, a through street in Windber. Appellant was proceeding south on 11th Street which intersects with Jefferson, where appellant had a stop sign. According to appellee's testimony, he was travelling within the speed limits on his own side of the road, when he saw appellant approaching the 11th Street intersection on his right. Appellant then stopped at the stop sign. When appellee was forty (40) feet away from the intersection, appellant pulled in front of him, allowing him neither space nor time to avoid the collision. The jury returned a verdict for the appellee in the amount of $15,000. A motion for new trial was refused by the court en banc on March 14, 1974, and on March 27, 1974, the lower court refused appellant's motion for reargument.

Appellant contends that the court erred in submitting the question of appellee's wage loss to the jury. Appellant also argues that the court erred in refusing to

grant a new trial based on the sufficiency of appellee's evidence. We agree with appellant's first contention only and grant a new trial for the purpose of determining damages.

The plaintiff has the duty and burden to establish by proper testimony the damages which he claims to have sustained, and if he fails to meet this burden, the question of damages cannot be submitted to the jury. *Link v. Highway Express Lines, Inc.*, 444 Pa. 447, 282 A.2d 727 (1971). The amount and items of pecuniary damage cannot be presumed but must be proved by the establishment of facts. *Maxwell v. Schaefer*, 381 Pa. 13, 112 A.2d 69 (1955) ; *Certified Laboratories of Texas, Inc. v. Rubinson*, 303 F. Supp. 1014 (E.D. Pa. 1969). It is the burden of the plaintiff to establish by evidence such facts as will furnish a basis for the legal assessment of damages according to some definite and legal rule. *Magar v. Lifetime, Inc.*, 187 Pa. Superior Ct. 143, 144 A.2d 747 (1958).

Appellee worked at the Bethlehem Steel Corporation mill located in Johnstown, Pennsylvania, as a laborer, chainman or drill helper. From the date of the accident until March 25, 1970, appellee could perform no work, according to his doctor's testimony, but from that date forward the doctor permitted the appellee to do light work. There was no job for appellee in his particular division at the time he was released for light work by his doctor. However, appellee made no attempt to ascertain if there was a similar job available in one of the other units in Bethlehem's Johnstown mill. Also, there was no indication that the appellee attempted to secure employment outside of Bethlehem Steel during this period, although he could have done that under the rules and regulations of Bethlehem Steel without jeopardizing his regular job with the company. According to the testimony, appellee did not work from August 16, 1969, to February 22, 1971, due to the accident.

Appellee's testimony concerning his rate of pay was limited to the following:

"Q. Where were you employed?

A. Bethlehem Steel Corporation, Johnstown.

Q. What did you do there? What was your job?

A. Laborer—just about everything they had a job for you. I started out in the car shop.

. . .

Q. And what was your job when you returned?

A. Laborer." (NT 23a-24a)

Mr. Gordon further testified:

"Q. Bob, when you were employed prior to the accident, what was your job? What did you do?

A. At the time of the accident I was a chain man.

Q. How were you paid?

A. Hourly.

Q. What was your hourly rate?

A. Around $3.25 per hour.

Q. As a chain man?

A. Yes.

. . .

Q. What was your hourly rate upon your return?

A. Upon my return it was around the same. Every year, you know, we have a contract, giving you 10 or 12 cents an hour raise, so I'd say approximately up to $3.50 at the time.

Q. You were still at an hourly rate when you returned?

A. Yes.

Q. Are you on an hourly rate today?

A. Yes.

Q. You've always been on an hourly rate as opposed to a salaried employee?

A. Yes.

MR. PATTERSON: Cross-examine.

BY MR. ORBAN:

Q. Did your hourly rate change when you changed jobs?

284

A. Yes, um huh.

Q. It could go down, could it not?

A. No, it can't go no lower than labor.

Q. Well, I mean it could go below $3.25?

A. No—yeah, I'd say yeah—yes, it would—if I was to go down to labor, yes.

Q. And Bob, you didn't try to get work outside your plant, did you—outside Bethlehem Steel, did you?

A. No, I didn't.

MR. ORBAN: That's all.

BY MR. PATTERSON:

Q. One question, Bob: How much lower than the chain man's rate was the labor rate?

A. I'd say approximately seven cents (7 cents) or a nickel.

Q. $3.18.

A. Somewhere around there." (NT 57a-58a)

Appellee called Robert James Horner, Assistant Supervisor of Personnel, Bethlehem Steel Corporation, who gave the following testimony:

"Q. Would you be familiar with the wages that are paid?

A. I would not be familiar with the wages paid. The normal procedure in cases where we desire wage information is a request to the Payroll Department, identifying the man or the person, asking for wages for a certain period, as specified.

Q. Is the Payroll Department under Personnel?

A. No, Sir, it is not.

Q. Is it a separate function?

A. It's a separate function, yes." (NT 47a)

Mr. Horner further testified at 54a:

"Q. Do you know the hourly rate of Mr. Gordon on August 16 of 1969?

A. I have no indication of the hourly rate, no, Sir.

Q. You don't have any indication?

A. No, Sir."

There were many important factors concerning wages as to which no testimony was given. First, the appellee called the Assistant Supervisor of Personnel to testify as to appellee's wage rate. However, his testimony establishes that he was not the proper person to call to prove a wage rate. Rather, someone from the Payroll Department should have been called to give evidence as to the proper rate. Secondly, there was no testimony concerning the amount of work available in appellee's particular division of the mill. The record is completely silent as to the average number of days worked per year in the past by the appellee. Finally, there was no indication of whether the mill was operating at full or partial capacity or if it was closed by a labor dispute during the time period in question.

Although all of this testimony was available to appellee, he elected not to produce it. Appellant's attorney requested the court to charge the jury that there is no basis for a finding for loss of wages in this case. The court then asked appellee's counsel what he had to say as to wages, to which he replied: "I think it's commonly known in the community how they work at Bethlehem Steel—the biggest employer in God-know how far. I think everybody knows they work five days a week, eight hours a day." Counsel, by that statement, impliedly recognizes the weakness of the offered proof with regard to lost wages. The judge also impliedly realized the lack of evidence concerning lost wages and tried to cure that defect by the following sentence in his opinion: "While the evidence on the latter point [lost wages] is not expressed, nor stated in so many words, such availability is clearly implicit in the testimony which is sufficient to warrant a rational inference that plaintiff lost $3.25 per hour, for a full time job of 40 hours weekly, for 18 months and 16 days, about 80 weeks, which comes to a total wage loss of $10,400.00."

Appellee also did not prove with any certainty when he was able to return to his regular duties. After leaving the hospital on August 27, 1969, appellee visited the doctor's office four times. Between the last two doctor visits on March 25, 1970, and February 19, 1971, almost a year's time passed. Consequently, the physician could not state with any certainty whether appellee was capable of performing his regular duties during that period or any portion of that period.

The law requires not merely conjecture, but rather sufficient data from which the damages can be assessed with reasonable certainty. *Macan v. Scandinavia Belting Company*, 264 Pa. 384, 107 A. 750 (1919). This view was followed in *Carroll v. Pittsburgh Railways Company*, 200 Pa. Superior Ct. 80, 187 A.2d 293 (1962), where the court stated: "Loss of earning power and its amount must appear by proper and satisfactory proof, and must not be left to conjecture." 200 Pa. Superior Ct. at 84, 187 A.2d at 295. There must be evidence upon which a jury's conclusion may be based. *Smith v. Bell Telephone Company of Pennsylvania*, 397 Pa. 134, 153 A.2d 477 (1959). Since clearly in this case the jury was permitted, by speculation and conjecture, to determine wage loss, we have no difficulty in declaring error in its submission.

The final issue to be decided concerns appellant's argument as to the sufficiency of the evidence on the question of liability. Appellant produced substantial countervailing evidence to appellee's testimony, but as stated by this court in *Eldridge v. Melcher*, 226 Pa. Superior Ct. 381, 396-97, 313 A.2d 750, 758 (1973): "It must be remembered that it is a basic legal principle that all the evidence must be considered upon review in the light most favorable to the verdict winner."

Also, all conflicts in the testimony are to be resolved in favor of the verdict winner, who is to be given the benefit of all facts and inferences reasonably deducible from the evidence. *Stimac v. Barkey*, 405 Pa. 253, 174

A.2d 868 (1961). As this court stated in *Eldridge v. Melcher, supra:*

"The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant. It is the duty of plaintiff to produce substantial evidence which, if believed, warrants the verdict he seeks. The right of a litigant to have the jury pass upon the facts is not to be foreclosed just because the judge believes that a reasonable man might properly find either way." 226 Pa. Superior Ct. at 387, 313 A.2d at 754.

The jury's verdict on liability in this case was not contrary to or against the clear weight of the evidence. Viewing the record in the light most favorable to appellee, the evidence is sufficient to support the fact-finder's conclusion of appellant's liability.

We, therefore, reverse and grant appellant a new trial, limited to damages only.