Myer PHILLIPS, Administrator of the
Estate of Gary Louis
Phillips, Deceased

v.

John WARD.

Civ. A. No. 74–1634.

United States District Court,
E. D. Pennsylvania.

Oct. 10, 1975.

Order on Damages May 18, 1976.

Irving L. Madnick, Philadelphia, Pa., for plaintiff.

Daniel T. McWilliams, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

We have before us an action for damages brought under 42 U.S.C. § 1983 for the death of Gary Louis Phillips when he was fatally shot by Defendant John Ward. Both parties agreed to try the case before this Court without a jury.

In this opinion, we consider only the liability issue, and herein incorporate as required by F.R.C.P. 52(a), our findings of fact and conclusions of law on this issue.

The parties stipulated to the facts relevant to the liability issue. On July 2, 1973, at approximately 1:39 p. m., Defendant received a call from Cheltenham Township Police Headquarters concerning a suspicious car and individual reported in the area of 8233 Aspen Way, Cheltenham Township, by Mrs. John Abrahams.

Defendant thereupon went alone and in uniform to the home of Mrs. Abrahams, who told him of the suspicious activities of a white male in his early twenties, approximately 5'8", with wavy brown hair, a sweat band on his right hand, and driving a vehicle described as a blue Ford, license no. 2F1–887.

Defendant reported this license number to headquarters, which reported to him a short time later that the vehicle belonged to Gary Phillips, plaintiff's decedent. Sergeant Robert Krauser, also patrolling the Cheltenham Township area that day, overheard the conversation between defendant and headquarters and reported to defendant that Gary Phillips, the suspect, was on a list of known burglary suspects. Sergeant Krauser also gave defendant a description of Gary Phillips.

Defendant then returned to Mrs. Abrahams' home and obtained again the description mentioned above of the suspicious individual, with the additional item of information that such individual observed by Mrs. Abrahams was wearing a sport shirt.

Defendant thereafter proceeded to 635 Greenbriar Road, one of two homes in whose vicinity Mrs. Abrahams had seen Gary Phillips exhibit the suspicious behavior she had reported.

Defendant walked to the rear of the home, and entered the rear porch through its unlocked door. On the locked inner porch door, leading into the house, he found fresh pry marks.

As defendant turned to leave the porch area, he heard a noise from the rear of the home. Walking north in the direction of the noise, he climbed two heavily wooded

embankments, and reached an area approximately four to six feet from a retaining wall about three feet in height.

At this point, defendant observed an individual standing roughly thirty to forty feet away, on the north side of the retaining wall, with his back to defendant. Defendant then proceeded further up the embankment, and noticed a television set and a stereo with speakers against the south side of the retaining wall.

As defendant drew nearer the person standing on the other side of the retaining wall, defendant noticed a sweat band on the person's wrist.

As defendant approached, this person suddenly turned his head, saw defendant, and began to run in a westerly direction. Defendant called, "Police, hold it" to the fleeing person, who ignored defendant's call and continued to run. Defendant then drew his .38 caliber police revolver, fired a warning shot, climbed over the retaining wall, and set out in pursuit of the suspect.

In the course of such pursuit, defendant came to a second wall and saw the suspect, who had leaped over the wall, getting to his feet. Defendant continued his pursuit, and fired a second warning shot into the ground, with the suspect approximately seventy-five to eighty feet from him. Defendant then yelled, "Police, stop or I'll shoot", but the suspect continued to run, and as he ran, with his back to defendant, raised his right hand across his body and into his shirt or belt area. Defendant, an expert marksman, at this point aimed his revolver at the suspect's midsection and fired a shot which struck the suspect.

After determining the suspect had been hit, and laying the suspect on his back, defendant telephoned headquarters. A police wagon subsequently arrived and took the suspect to the emergency ward of Abington Hospital, where he was pronounced dead at 2:35 p. m. The suspect was in fact Gary Phillips.

Against these facts, Gary Phillips' father, as administrator of Gary Phillips' estate, brought the instant action under 42 U.S.C.

§ 1983, claiming that defendant's fatal shooting of decedent deprived decedent of certain civil rights.

■ Deprivation of life by a state or local law enforcement official clearly constitutes a claim cognizable under 42 U.S.C. § 1983, if the deprivation of life results from an illegal use of force by the law officer.

■ In this case, Pennsylvania law governs the use of deadly force by a law officer in making an arrest. Pa.Stat.Ann. tit. 18 § 508(a) (1973) provides:

"(a) Peace officer's use of force in making arrest.—

(1) A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest. However, he is justified in using deadly force only when he believes that such force is necessary to prevent death or serious bodily injury to himself or such other person, or when he believes both that:

(i) such force is necessary to prevent the arrest from being defeated by resistance or escape; and

(ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon, or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay.

(2) A peace officer making an arrest pursuant to an invalid warrant is justified in the use of any force which he would be justified in using if the warrant were valid, unless he knows that the warrant is invalid.

In this case, the facts do not support the argument that defendant could reasonably have believed that it was necessary to use deadly force against Gary Phillips to pre-

vent death or serious bodily injury to defendant or anyone else.

■ Defendant argues that he had reason to believe that Phillips posed such a threat when Phillips, some seventy to eighty feet away, with his back to defendant, and in definite flight, reached across his chest with his right arm. This argument fails to persuade us. For one thing, the facts do not establish that it was this gesture by Phillips rather than simply his potential escape, that caused defendant to shoot. Even if, however, defendant did act only because of this gesture, we do not believe that Phillips' arm gesture alone, given the rest of Phillips' behavior, gave defendant reason to believe that Phillips posed a safety threat to defendant or anyone else. Had Phillips pivoted or even stopped, whether or not he in fact had a weapon, we would have a different case. But where a suspect shows from the very beginning of the episode an inclination only to flee, a single movement of an arm, while the suspect is on the dead run, seventy to eighty feet away, with his back turned, does not support a conclusion that such suspect poses a safety threat requiring the use of deadly force against him.

Accordingly, if defendant's action is to be justified under § 508, it must lie in the provisions of subsections (i) and (ii), which allow deadly force upon the belief both that such force is necessary to prevent the arrest's being defeated by escape, and that the suspect has committed or attempted a forcible felony.[1]

■ In this particular case, both sides have focused largely on whether Gary Phillips' taking of the personal property which defendant found constitutes a "forcible" felony within the purview of § 508. We need not reach this issue, however, for we believe that the evidence in this case does not support the other prong of this test, namely, that defendant could reasonably

have believed that deadly force was necessary to prevent his suspect's defeating his arrest by escape.

The evidence in this case shows that defendant either knew, or at the very least should reasonably have known or suspected that his fleeing suspect was Gary Phillips. Headquarters had told defendant the car driven by the suspicious person Mrs. Abrahams had reported belonged to Gary Phillips, Mrs. Abrahams had identified the suspect in detail, including the wrist band on the right hand, and the suspect who fled from defendant matched Mrs. Abrahams' description. In addition, Sergeant Krauser had given defendant another description of Gary Phillips, supplementing the description given by Mrs. Abrahams, and nothing in the evidence suggests the suspect who fled from defendant, while matching Mrs. Abrahams description failed to match Sergeant Krauser's description as well. With these facts, we believe defendant could reasonably have believed nothing but that the suspect he was chasing was Gary Phillips. Conversely, we do not believe defendant, with the above facts, could reasonably have believed he did not know the fleeing suspect's identity.

Having such grounds to believe the fleeing suspect was Gary Phillips, defendant also knew that Gary Phillips was a local resident, and defendant had Phillips' local address.

In light of these facts, we cannot conclude that defendant had reasonable grounds to believe he had to use deadly force to arrest the suspect he was chasing. Instead, we believe that defendant could only reasonably have believed that he could arrest that suspect by proceeding to or staking out Gary Phillips' local home address. While defendant might reasonably have believed he needed to use deadly force to stop the suspect on the spot, rather than arresting him later, we do not believe

---

1. The part of (ii) which deals with a suspect's possessing a deadly weapon, or otherwise indicating he may endanger life or inflict serious bodily injury does not in our opinion apply to this case, for the same reasons set forth above with respect to the reasonableness under subsection (1) of a belief that Phillips posed the threat of death or serious bodily injury to defendant or others.

§ 508's provisions are limited to such a narrow concept of "arrest". § 508 focuses on the prospect of a suspect's arrest without the use of deadly force, and not the timing of that arrest. The clear language and thrust of that part of § 508 under discussion here is that the use of deadly force by a law enforcement official must be a last resort in making an arrest, and if the official can reasonably hope to apprehend a suspect without the use of deadly force, the official must do so. Against this standard, however exemplary defendant's record to date has been, we can conclude only that defendant erred in his use of deadly force in this particular case.

We reach here no conclusion on damages, on which issue the parties have not yet presented evidence. Until we receive such evidence, and reach a conclusion on damages, we shall refrain from entering any judgment order in this case.

### ORDER ON DAMAGES

This case is an action for damages brought under 42 U.S.C. § 1983 for the death of Gary Phillips, who was fatally shot by defendant police officer John Ward. In an opinion dated October 8, 1975, I determined that the defendant's use of deadly force was unlawful under 18 Pa.Stat. § 508 (1973). I have now heard evidence on the question of damages, and my findings of fact and conclusion of law on this issue are incorporated in this opinion, as required by Rule 52(a) of the Federal Rules of Civil Procedure.

The facts from which this suit arose are detailed in this Court's prior opinion of October 8, 1975. Defendant police officer was investigating a report of a suspicious individual and discovered a person apparently engaged in a burglary. The suspect attempted to escape, and the defendant went in pursuit. During the course of this pursuit, the suspect was shot by the defendant, and subsequently was pronounced dead. The suspect was in fact Gary Phillips.

This suit was filed by the decedent's father as administrator of the estate of Gary Phillips. The items of damage claimed by the plaintiff include hospital expenses, funeral and cemetery expenses, impairment of Gary Phillips' future earning capacity, and Gary Phillips' pain and suffering between the time he was shot and the time of his death. I will first consider the claim based on impaired earning capacity, since that is by far the most important category of damages.

The testimony indicates that Gary Phillips was born on April 15, 1952, and that he left school after the 10th grade, when he reached the age of sixteen. Gary Phillips' school records show that he was a poor student and that his attendance was sporadic. For example, in his last year in school Gary Phillips was absent on 125 school days. In the five years after leaving high school, Gary Phillips had part-time jobs in an auto parts store and in clothing stores. One of these jobs had been obtained for Gary by his brother Joseph, who was assistant manager of the store. Although Gary was not fired, he left after a few months because he didn't want to work. None of these jobs lasted very long, and the plaintiff estimated that his son never earned more than $600 in any one year. Gary Phillips did not file federal income tax returns.

A few months before his death Gary Phillips apparently had taken some steps toward opening a window cleaning business, such as buying supplies and obtaining a license. His brother, Michael Phillips, testified that he had intended to offer Gary a job as a salesman of bakery products, and that Gary had seemed interested. However, at the time of his death, Gary Phillips had not started a window cleaning business, nor had he actually accepted an offer of employment from his brother.

The plaintiff introduced the testimony of a vocational expert, Dr. Saul Leshner, concerning the kinds of jobs that are available to a person with little work experience who dropped out of high school in the 10th grade. Dr. Leshner testified that Gary Phillips would have been qualified for unskilled or semi-skilled occupations, such as retail selling. Dr. Leshner estimated that a

person with Gary Phillips' background could expect to earn about $9,000 per year, and perhaps as much as $10,000–$12,000. The plaintiff also introduced economic and actuarial testimony to show the yearly productivity increases that can be expected in the future, and the present value of future earnings losses calculated at several different levels of annual earnings.

The defendant produced testimony showing Gary Phillips' involvement with drugs. Gary Phillips had been convicted in 1971 for possession of marihuana, and a neighbor testified that he had observed Gary Phillips smoking marihuana several times. More importantly, the toxicology report prepared after Gary Phillips' death showed the presence of significant amounts of the stimulant phenmetrazine (preludin).

In addition to evidence of Gary Phillips' use of drugs, the defendant introduced evidence of the decedent's alleged criminal activities. At the time of his death, Gary Phillips apparently was in the process of committing a burglary. Several weeks earlier, a criminal complaint had been issued against Gary Phillips charging him with criminal attempt and burglary. Testimony at the trial indicated that Gary Phillips once was observed during a surveillance of a suspected fence who was later arrested and placed on probation for conspiracy and receiving stolen property. Police Officer Robert Horgan testified that he frequently saw Gary Phillips in the company of Ricky Brown, Allen Brown, James O'Brien, Thomas O'Brien, Joseph Ball and Louis Moonblatt. All of these individuals have arrest records, mostly for charges relating to burglary and drug use.

The defendant also introduced the testimony of James J. McKenna, a criminal sociologist. Based on Gary Phillips' school records, arrest records, involvement with drugs, and associations with other persons with criminal records, Dr. McKenna expressed an opinion that Gary Phillips shared the hostile and anti-social attitudes of a career burglar. Dr. McKenna testified that Gary Phillips' employability was negligible because of his criminal record and past history of not working. Dr. McKenna believed that there was a good possibility that Gary Phillips would be incarcerated at some time, and he noted that the rate of recidivism is high for burglary.

■ Considering all of the evidence received in this case, I find that the plaintiff has not met his burden of proof and therefore has not established any future loss of earnings. Although an award for impairment of future earning capacity necessarily involves some uncertainty, it must be based on evidence, not on sheer conjecture or speculation. See *Hoffman v. Sterling Drug, Inc.,* 485 F.2d 132, 143 (3d Cir. 1973); *Longden v. Conestoga Transportation Co.,* 313 Pa. 561, 169 A. 884 (1934); *Gordon v. Trovato,* 234 Pa.Super. 279, 338 A.2d 653 (1975). In this case, any award for impairment to future earning capacity would be entirely speculative. The plaintiff's actuarial testimony was premised on an unwarranted assumption that Gary Phillips suddenly would have taken a full time job. Although appropriate jobs may have been available, as Dr. Leshner testified, the plaintiff failed to show that Gary Phillips actually would have accepted a job. Gary Phillips' past work history, his school records, and his involvement with criminal activity indicate that Gary Phillips lacked any desire to work, and most likely would not have earned more than his personal maintenance expenses. While he eventually might have overcome his problems, no evidence was presented to show that this would occur, or when it would occur. Consequently, the plaintiff is not entitled to an award for impairment to future earning capacity.

■ The plaintiff is entitled to recover for funeral and burial expenses, medical expenses, and Gary Phillips' conscious pain and suffering between the time he was shot and the time of his death. The records introduced at trial show that funeral expenses were $1,951.80, cemetery expenses were $300.00, and medical expenses totaled $38.50. The evidence also shows that Gary Phillips was conscious when placed in an ambulance, unconscious when admitted to

Abington Memorial Hospital, and that he apparently gave no indication of being in pain. Under these circumstances, an award of $300 is appropriate compensation for Gary Phillips' conscious pain and suffering.

Judgment will be entered for the plaintiff in the amount of Two Thousand Five Hundred Ninety Dollars and Thirty Cents ($2,590.30).