## Trimiew v. Keystone Insurance Co.

*Allen L. Feingold*, for plaintiffs.
*John G. Jenemann*, for defendant.

FORER, *J.*, November 13, 1978—These two actions raise identical questions. Both plaintiffs filed suits against defendant on July 27, 1978, alleging failure to honor claims and pay medical bills incurred because of injuries sustained in automobile accidents. (Trimiew's accident occurred on July 22, 1975; O'Neill's accident occurred on October 3, 1975.) Defendant filed similar preliminary objections in both cases in the nature of a demurrer on the grounds of: 1. Failure to bring the action within two years and; 2. That the complaint states a claim for punitive damages for which there are no factual allegations. Additionally, defendant moves for more specific pleading on the ground that specific fraudulent acts have not been alleged.

Both actions are brought under the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq. The first relevant section, section 1009.106(c)(1), reads in part as follows: "If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier."

Defendant contends that the statute of limitations begins to run from the dates of the accidents. Plaintiffs assert that these are actions for breach of contract and, therefore, the six-year statute of limitations governing contract actions: Act of March 17, 1713, 1 Sm.L. 76, 12 P.S. §31, is applicable.

The provisions of the Pennsylvania No-fault Act cannot be circumvented by suing in assumpsit: Smith v. Harrisburg Taxicab & Baggage Co., 75 D. & C. 2d 786 (1976). Hence, the two-year statute contained within the act itself is controlling. The critical question is the time when the two-year period begins to run. Section 1009.106(c)(1) establishes that time as the date "the victim suffers the loss . . . or in the exercise of reasonable diligence should have known, that the loss was caused by the accident."

Section 1009.106(a)(1) provides: "No-fault benefits are payable monthly as loss accrues. Loss accrues *not* when the injury occurs, but as allowable expense, work loss, . . . is sustained." (Emphasis supplied.) It is, therefore, clear that the date of the accident is *not* the date from which the statute of limitations begins to run, as in most other cases.

Loss is defined as accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle, limited to allowable expense, work loss, etc.: §1009.103. Allowable expense is defined in section 1009.103 to mean reasonable charges for reasonably needed and used professional medical treatment, care and services. Work loss is defined as loss of gross income of the victim and the reasonable expenses incurred by the victim for hiring special help to mitigate the loss of income: §1009.103.

This court must decide when a claimant suffers an allowable expense or work loss. With respect to medical expenses, there are three possible dates: 1. When the patient sees the doctor; 2. When the doctor sends the bill; and 3. When the doctor files the Pennsylvania No-fault Motor Vehicle Insurance Act attending physician's report (a form provided by the Commonwealth).

Before a court can determine that certain injuries resulted from a particular accident, a medical opinion is required unless there is such a close connection between the accident and the injury as to satisfy a reasonable person as to the cause of the injury: Schultz v. Pivar, 370 Pa. 271, 88 A. 2d 74 (1952). Similarly, loss of earning power and its amount must be shown by proper and satisfactory proof. In Gordon v. Trovato, 234 Pa. Superior Ct. 279, 338 A. 2d 653 (1975), defendant-appellant was granted a new trial on the issue of damages because the physician witness "could not state with any certainty whether appellee plaintiff was capable of performing his regular duties. . . . " Id. at 286.

No-fault benefits are overdue if not paid within

30 days after receipt by the obligor of reasonable proof of the fact and amount of the loss sustained: §1009.106(a)(2). A medical opinion that the injuries resulted from the accident in question supplies the reasonable proof required by the act. A claimant, of course, cannot know that his bill will not be paid until 31 days after the report is forwarded. In the instant case, this report was signed on October 4, 1977, for Trimiew, and on November 9, 1976, for O'Neill, and forwarded to defendant on June 15, 1978, for Trimiew and June 16, 1978, for O'Neill.

The stated purposes of the No-fault Act include the assurance to the victim of an accident of "payment of his basic medical and rehabilitation costs, and recovery of a reasonable amount of work loss . . . " and "[the elimination of the] need to determine fault except when a victim is very seriously injured." §1009.102(a)(6). These purposes would not be furthered if a claimant were required to file suit before the obligor had an opportunity to pay voluntarily. Injured parties would be put to unnecessary expenses in filing claims that may eventually be paid without legal action.

Section 1009.106(c) must be interpreted to mean that a claimant knows or should have known that the loss was caused by the accident in question on the earlier of (a) the filing of the Pennsylvania No-fault Motor Vehicle Insurance Act attending physician's report, or (b) four years after the date of the accident. The report in O'Neill v. Keystone was forwarded to defendant on June 16, 1978, and in Trimiew v. Keystone on June 15, 1978. The instant actions are not barred by the statute of limitations and defendant's preliminary objections on this

issue are dismissed. See also Richards v. Am. Fellowship Mutual Ins. Co., 84 Mich. App. 629, 270 N.W. 670 (1978).

Defendant's preliminary objections on the issue of whether punitive damages can be recovered in a no-fault action are governed by the decision in O'Shanick v. Allstate Ins. Co., 431 F.Supp. 382 (W.D.Pa. 1977). The court there held that an insurer acting in bad faith could not be liable for punitive damages, but only for those remedies provided in the act. The provisions granting 18 percent interest in the case of overdue payments and attorney fees are the injured claimant's exclusive remedies for failure to make timely payments. Accordingly, defendant's preliminary objections are granted on this issue.

## ORDER

And now, November 13, 1978, upon consideration of defendant's preliminary objections,

1. The objection in the nature of a demurrer is overruled;

2. Plaintiff's claim for punitive damages is dismissed;

3. Plaintiff is ordered to file an amended complaint within 20 days alleging with particularity specific fraudulent acts.

## ORDER

And now, November 14, 1978, defendant's motion for a protective order is dismissed as moot.