Ramona AFRICA

v.

The CITY OF PHILADELPHIA, W. Wilson Goode, Leo Brooks, Gregore Sambor, William Richmond, Lt. Frank Powell, Officer William Klein, Officer Michael Tursi, Sgt. Albert Revel, Sgt. Edward Connor, Edward G. Rendell, Corporal Morris Demsko, State Trooper Richard Reed.

Master File No. 85–2745.
No. 87–2678.

United States District Court,
E.D. Pennsylvania.

Dec. 8, 1992.

Andre Dennis, Stradley, Ronon, Stevens, & Young, Philadelphia, PA, for Ramona Africa.

John D.J. Shellenberger, Philadelphia, PA, John G. Knorr, Chief Deputy Attys. Gen., Com. of Pennsylvania, Harrisburg, PA, for Richard Reed and Morris Demsko.

Nolan N. Atkinson, Jr., Frank E. Noyes, II, Duane, Morris & Heckscher, Philadelphia, PA, for W. Wilson Goode.

John W. Morris, Philadelphia, PA, for Gregore Sambor.

Steven R. Waxman, Leslie M. Gerstein, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for Leo Brooks.

Richard D. Malmed, Philadelphia, PA, for Frank Powell.

Peter C. Kennedy, Hecker Brown, Sherry & Johnson, Philadelphia, PA, for William Richmond.

Carl Oxholm, Philadelphia, PA, for William Klein.

Arlene F. Bell, Chief Deputy City Sol., Philadelphia, PA, for City defendants.

## OPINION

LOUIS H. POLLAK, District Judge.

On March 26, 1992, Magistrate Judge Hall issued a Report and Recommendation recommending denial of motions for summary judgment on qualified immunity grounds filed by defendants W. Wilson Goode, Leo Brooks, Gregore Sambor, William Richmond, Frank Powell, William Klein, Morris Demsko, and Richard Reed.[1] The Report and Recommendation concluded that a determination of the "objective reasonableness" of these defendants' conduct was laden with genuine issues of material fact. Each of these defendants has filed objections to the recommended denial of summary judgment. For the reasons that follow, I am not at this time persuaded that summary judgment should be denied

and instead think the matter should be remanded to Magistrate Judge Hall for further consideration in light of the views expressed in this Memorandum.

## I

### Factual and Procedural History

This civil rights action, brought by MOVE member Ramona Africa pursuant to §§ 1983 and 1985, arises out of events that occurred on May 13, 1985, when police officers attempted to execute search and arrest warrants for plaintiff and other members of MOVE who resided at 6221 Osage Avenue in West Philadelphia. At the summary judgment stage, the court must take as true all evidence proffered by the nonmovant and make all justifiable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Accordingly, for purposes of these summary judgment motions, the facts are as follows.

The warrants were issued pursuant to a judicial finding of probable cause that MOVE members had engaged in acts of harassment, disorderly conduct, and riot, made various terroristic threats, and were in possession of explosive or incendiary devices. The probable cause affidavit contained reports from neighbors that MOVE members had announced over a loudspeaker that they had wired the block around their residence with explosives and would blow it up if neighbors spoke with police or if the police took any action against MOVE. Similarly, a neighborhood resident was reported to have heard MOVE members state over their loudspeaker that if anyone in the neighborhood spoke with police "we will get you. We have guns, too." Affidavit of Probable Cause at 5.

After District Attorney Rendell[2] notified Mayor Goode that there was probable cause to search the MOVE residence and

---

1. Magistrate Judge Hall also recommended that summary judgment be granted on qualified immunity grounds for three other defendants— Michael Tursi, Albert Revel and Edward Connor. On August 18, 1992, I entered an order granting summary judgment in favor of these three defendants. *See infra* note 5.

2. Defendant Rendell's motion for judgment on the pleadings, or, in the alternative, for summary judgment is addressed in a separate Memorandum & Order.

arrest its inhabitants, Mayor Goode told Police Commissioner Sambor to prepare a plan to enter the residence and execute the warrants. The initial scheme called for the use of water hoses directed at a bunker on the roof of the house and the drilling of holes in the walls of adjoining houses through which tear gas would be injected.

On May 13, 1985, Police Commissioner Sambor put this plan into operation. The MOVE members resisted, and gunfire was exchanged between the police and the MOVE members. After the original tear gas scheme was tried and failed, resort was had to another scheme—one in which an explosive device would be used to dislodge the bunker from the roof of the MOVE residence so that tear gas could be introduced through a hole in the roof. Pursuant to this plan, Pennsylvania State Troopers Morris Demsko and Richard Reed transported Philadelphia Police Lt. Frank Powell and a bomb—made of "Tovex", an industrial explosive, and "C–4," a military explosive—in a helicopter to the MOVE residence, and the bomb was dropped on the bunker from the helicopter. A fire ensued, which was allowed to burn in hopes of destroying the bunker.[3] The fire spread out of control, destroying the MOVE residence and killing five of the six children and six of the seven MOVE adults who were inside the house. Plaintiff, who suffered burns, was the only adult to survive. The fire also destroyed sixty-one other houses and damaged many others.

Following these events, Mayor Goode set up a Special Investigation Committee to probe the occurrences of that day. Proper-

ty owners brought actions against the instant defendants, claiming a variety of injuries from the destruction of their property. Other actions were brought on behalf of Louise James, the owner of the MOVE house, and by the estates of the MOVE adults and children who passed away in the fire. Subsequently, I consolidated these actions.[4]

On May 7, 1987, Ms. Africa filed this action, claiming that defendants had deprived her of various constitutional rights. After more than four years of discovery, the City and State defendants each filed a motion for summary judgment, contending that the principle of qualified immunity precluded their liability for money damages. Plaintiff responded that defendants were not entitled to qualified immunity as a matter of law, or, alternatively, that material issues of fact precluded resolution of the qualified immunity questions prior to trial.

## II

### Magistrate Judge Hall's Recommendations

In his Report and Recommendation, Magistrate Judge Hall decided that the defendants involved either in the plan to drop the bomb on the MOVE residence or in the decision to let the bunker burn should not be granted qualified immunity at the summary judgment stage.[5] On his view, the qualified immunity question was inextricably intertwined with the unresolved merits of plaintiff's excessive force claim, since each turned on the same question—whether, under the totality of the circumstances,

---

3. Plaintiff contends, and defendants deny, that another purpose of letting the fire burn was to flush out the MOVE residents. Magistrate Judge Hall allows that there is record evidence to support plaintiff's contention, *see* R & R at at 17, but without citations to the record it is impossible for me to ascertain whether plaintiff's allegation is well-supported. *See infra* note 12.

4. Most of the property claims and claims of the estates of the deceased victims of the fire have settled. Actions brought by Louise James and by the estate of Vincent Leaphart, an occupant of the MOVE residence who died in the fire, are still pending.

5. Magistrate Judge Hall dealt separately with the three defendants who had only been involved in the initial plan to drill holes for tear gas in adjoining walls: Officer Michael Tursi, Sgt. Albert Revel, and Sgt. Edward Connor. He recommended that they were entitled to qualified immunity because their actions involved a reasonable use of force in making the arrests and hence were "objectively reasonable" for qualified immunity purposes. On August 18, 1992, I adopted and approved the recommendations pertaining to these three defendants, to which no objections had been offered, thereby granting their motions for summary judgment.

the use of force in question was "objectively reasonable." Applying this unitary standard of objective reasonableness, Magistrate Judge Hall found that there was sufficient record evidence to support a jury finding that the use of the bomb constituted excessive force and that each of the remaining defendants, with the exception of Fire Commissioner William Richmond, was involved in the plan to drop the bomb. Similarly, Magistrate Judge Hall determined that a juror could conclude that allowing the fire to continue to burn to facilitate the arrest of the MOVE occupants was objectively unreasonable, and that the decision had been made or approved by defendants Sambor, Richmond, Brooks, and Goode. Accordingly, Magistrate Judge Hall recommended that a decision on whether the movants had qualified immunity for the harm caused by the dropping of the bomb and ensuing fire should await trial.

### III

#### Legal Analysis

■ Defendants bear the burden of showing that they are entitled to qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982); *Stoneking v. Bradford Area School Dist.,* 882 F.2d 720, 726 (3d Cir. 1989), *cert. denied sub nom Smith v. Stoneking,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1991); *Ryan v. Burlington County,* 860 F.2d 1199, 1204 n. 9 (3d Cir. 1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). "Whether an official may prevail in his qualified immunity defense depends upon the 'objective reasonableness of [his] conduct as measured by reference to clearly established law'." *Davis v. Scherer,* 468 U.S. 183, 191, 104

S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738); *see also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Therefore, in deciding whether to grant summary judgment based on qualified immunity, a court must address the state of the law at the time of the incident and determine whether the officer acted reasonably in light of the "clearly established" law and the information he possessed at that time.

### A.

#### The Status of the Law of Excessive Force on May 13, 1985

■ In order to defeat defendants' qualified immunity, plaintiff must establish that the constitutional right which she alleges (the right not to be subjected to excessive force in the course of an arrest) was sufficiently well established at the time of the MOVE incident such that a reasonable official engaging in the conduct for which plaintiff seeks damages would have understood that his actions violated plaintiff's constitutional rights. *See Anderson,* 483 U.S. at 639–40, 107 S.Ct. at 3038–39; *Good v. Dauphin County Social Services,* 891 F.2d 1087, 1092 (3d Cir.1989).[6] Defendants make much of the fact that *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)—the opinion from which Magistrate Judge Hall drew the contours of the constitutional right to be free from excessive uses of physical force during an arrest—was not decided until four years after the events in question. Be that as it may, defendants cannot deny that even before *Graham* the "contours of the rights" relied upon by plaintiff were sufficiently clear that the defendants "should have

---

**6.** In *Anderson,* the Court stressed that the contours of the right said to be "clearly established" "must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Applying *Anderson,* the Third Circuit has taken a flexible approach to evaluating whether a constitutional right was "clearly established."
"'[S]ome but not precise factual correspondence' to precedent" is necessary for the defen-

dant to be charged with knowledge of the unlawfulness of his or her actions. The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful.
*Good,* 891 F.2d at 1092 (citations omitted); *see also Stoneking,* 882 F.2d at 726.

known what the Constitution required of them." *Good*, 891 F.2d at 1092.

As early as 1972, the Third Circuit noted that the Constitution is offended "where the application of ... force exceeds that which is reasonable and necessary under the circumstances, and also 'violates standards of decency more or less universally accepted.'" *Howell v. Cataldi*, 464 F.2d 272, 282 (3d Cir.1972) (citation omitted). That principle was reiterated in *Black v. Stephens*, 662 F.2d 181 (3d Cir.1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). There, the Third Circuit affirmed that a jury could find that Stephens, a plainclothes detective, used excessive force in arresting a suspect by placing a gun 18 inches from his head and threatening to shoot. The court concluded:

> A law enforcement officer's infliction of personal injury on a person by the application of undue force may deprive the victim of a fourteenth amendment "liberty" without due process of law. "The protection of fundamental liberties by the due process clause and the eighth amendment extends to protection from an official's abusive exercise of his powers to inflict grossly undue harm." ...
> The test under the due process clause is whether the police officer's conduct "shocks the conscience."

662 F.2d at 188 (citations omitted). In applying this due process standard, the district courts of this Circuit repeatedly used § 508 of the Pennsylvania Criminal Code as a yardstick for measuring whether a police officer used force which substantially exceeded that which is reasonable and necessary under the circumstances. *See, e.g., Dolan v. Golla*, 481 F.Supp. 475, 480 (M.D.Pa.1979), *aff'd*, 633 F.2d 209 (3d Cir. 1980); *Hausman v. Tredinnick*, 432 F.Supp. 1160, 1162 (E.D.Pa.1977); *Phillips v. Ward*, 415 F.Supp. 976, 978 (E.D.Pa. 1975). That provision provides in relevant part:

> (a) Peace officer's use of force in making arrest—
> (1) A Peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest. *However, he is justified in using deadly force only when he believes that such force is necessary to prevent death or serious bodily injury to himself or such other person*, or when he believes both that:
> (i) such force is necessary to prevent the arrest from being defeated by resistance or escape; and
> (ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon, *or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay.*

18 Pa.Cons.Stat.Ann. § 508(A)(1) (1983) (Adopted December 6, 1972) (emphases added).

In *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), decided approximately two months before the MOVE incident, the Court for the first time analyzed within the framework of the Fourth Amendment an excessive force claim arising in the context of an arrest. In *Garner*, police officers shot a fleeing suspect who was apparently unarmed, as permitted by a Tennessee statute which provided that "the officer may use all the necessary means to effect the arrest" of a defendant who attempts to escape after notice of the officer's intention to arrest him. Tenn.Code Ann. § 40-7-108 (1982) (quoted in *Garner*, 471 U.S. at 4, 105 S.Ct. at 1698). Balancing the nature of the Fourth Amendment intrusion against the Government's interest said to justify that intrusion, the Court concluded that

> [t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable.... Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify

the use of deadly force to do so.... The Tennessee statute is unconstitutional insofar as it authorizes the use of deadly force against such fleeing suspects.

It is not, however, unconstitutional on its face. *Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.* Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11–12, 105 S.Ct. at 1701 (emphasis added).

This standard enunciated by the *Garner* Court echoes § 508, perhaps not surprisingly, given the Court's statement that "[i]n evaluating the reasonableness of police procedures, we have ... looked to prevailing rules in individual jurisdictions." *Id.* at 15–16, 105 S.Ct. at 1703. As evidence of an impressive trend away from the permissive Tennessee rule, the Court cited laws in eighteen states that permitted the use of deadly force only when the suspect is likely to endanger life or inflict serious injury if not arrested. One of these statutes noted with apparent favor was Pennsylvania's

§ 508. *See id.* at 17 n. 18, 105 S.Ct. at 1704 n. 18.

Thus, while the precise constitutional basis for excessive force claims was in some flux at the time of the events in question,[7] the clear constitutional parameters for use of deadly force—whether incorporated into a substantive due process test or a Fourth Amendment reasonableness test—were the standards set forth in § 508 and given constitutional pedigree by the Supreme Court two months before the bomb was dropped on the MOVE residence. Therefore, in this case the relevant question for qualified immunity purposes is whether a reasonable person in each defendant's position could have believed that use of a bomb and/or the decision to let the fire burn was necessary to "prevent death or serious bodily injury" to the police officers on the scene or other persons.[8]

### B.

### *The Conduct of the Defendants*

■ Notwithstanding that defendants should have been aware of the governing legal principles embodied in § 508 and *Garner*, this does not end the qualified immunity inquiry. Defendants are "nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles." *Good*, 891 F.2d at 1092. On defendants' view, Magistrate Judge Hall's recommendation to defer the

---

7. When the Court decided *Graham*, in 1989, it observed that in the years leading up to that decision "the vast majority of lower federal courts" continued to evaluate excessive force claims according to a substantive due process standard. 490 U.S. at 393, 109 S.Ct. at 1870. Indeed, in *Graham's* lower court proceedings, a divided panel of the Fourth Circuit thought the appropriate question with respect to excessive force was whether the individual officers acted in "good faith" or "maliciously and sadistically for the very purpose of causing harm." 490 U.S. at 397, 109 S.Ct. at 1872. Only through its *Graham* opinion did the Court

make explicit what was implicit in *Garner's* analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the

Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

490 U.S. at 395, 109 S.Ct. at 1871 (emphasis in original).

8. This inquiry is focused in somewhat greater detail than the immunity question posed by Magistrate Judge Hall: whether, in light of the 1989 *Graham* decision, "it can be said that the police and other involved officials reasonably believed that the bomb was a proper and necessary type of force to use in the situation at the MOVE house." R & R at 16. Given the more detailed contours of the immunity question posed in the text of this Memorandum, it may be more readily susceptible of resolution at the summary judgment stage than the somewhat more open-ended question which Magistrate Judge Hall addressed.

qualified immunity determination until presentation of the conflicting factual accounts at trial wrongfully abdicates judicial responsibility. As a general matter, it is true that qualified immunity is a legal question for the court, not for the jury; *Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *see also Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1233 (11th Cir.1992); *Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir. 1988); however, it may be impossible to make a determination of "objective reasonableness" in a void, without first making some preliminary determination as to what conduct the defendants engaged in and what information they actually possessed at the time.[9] It has long been practice at the summary judgment stage to refrain from deciding genuine questions of fact. *See, e.g., Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). On the other hand, the Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." [10] *Hunter*, —— U.S. at ——, 112 S.Ct. at 536. Therefore, in deciding whether a defendant is entitled to qualified immunity at the summary judgment stage, the difficult task is to square the normal rules pertaining to summary judgment—under which the court

typically must allow a case to proceed to trial whenever there is sufficient evidence such that a reasonable jury could find in favor of the nonmovant—with the Supreme Court's repeated, and increasingly clear, admonitions that qualified immunity should, wherever possible, be decided in advance of trial.

Its stated preference for prompt judicial resolution of qualified immunity question notwithstanding, the Court, when discussing its favored approach to qualified immunity in the summary judgment context, has often simply restated the normal summary judgment standard, emphasizing that defendant is entitled to summary judgment only if "discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. Consistent with this approach, the Third Circuit has repeatedly indicated that summary judgment should not be granted when there is a genuine issue of fact about immunity. *E.g., Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991); *Good*, 891 F.2d at 1096–7.[11] However, it is worth stressing

**9.** *"Anderson teaches us that th[e] inquiry into reasonableness requires examination of the information possessed by the defendants." Stoneking*, 882 F.2d at 727.

**10.** The rationale for early resolution of qualified immunity claims is that qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and, like an absolute immunity, *it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original). In *Harlow*, the Court removed the subjective element of the qualified immunity defense—whether the official took the action with "malicious intent"—to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on *summary judgment."* 457 U.S. at 818, 102 S.Ct. at 2738. Most recently, the Court reiterated its commitment to prompt *judicial* resolution of qualified immunity questions.

The decision of the Ninth Circuit ignores the import [of decisions stressing the importance of early resolution of immunity questions.]

The Court of Appeals' confusion is evident from its statement that "[w]hether a reasonable officer could have believed he had probable cause is a question for the trier of fact, and summary judgment ... based on lack of probable cause is proper only if there is only one reasonable conclusion a jury could reach." This statement of the law is wrong for two reasons. First, it routinely places the questions of immunity in the hands of the jury. Immunity ordinarily should be decided by the court long before trial. Second, the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact. *Hunter*, —— U.S. at ——— ———, 112 S.Ct. at 536–37 (citations omitted).

**11.** *Accord Gainor v. Rogers*, 973 F.2d 1379, 1383 (8th Cir.1992); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir.1992); *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992); *Courson v. McMillian*, 939

that the qualified immunity question should not be deferred simply because there is a dispute over what actually happened on May 13, 1985, or as to the conclusion a juror could reasonably reach with respect to the Fourth Amendment reasonableness of defendants' conduct. As the Court made clear in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the questions of whether defendant's conduct was reasonable under the Fourth Amendment and whether he acted reasonably for qualified immunity purposes are not interchangeable. Employing what Justice Stevens, in dissent, termed a "double standard of reasonableness," *Anderson*, 483 U.S. at 648, 107 S.Ct. at 3044 (Stevens, J., dissenting), the Court noted that even though the Fourth Amendment is also phrased in reasonableness terms, qualified immunity differs because it is designed to avoid liability even where the official may not have complied with the Fourth Amendment but could reasonably have believed at the time that he did. 483 U.S. at 643–44, 107 S.Ct. at 3041. Because the crucial concern in the qualified immunity context is what the official could reasonably have perceived the reality to be, *Gooden v. Howard*, 954 F.2d 960, 965 (4th Cir.1992), a qualified immunity determination should be reserved only where resolution of what actually happened is necessary to decide whether the defendant official could reasonably have believed that his actions were lawful. *Rainey v. Conerly*, 973 F.2d 321, 323–24 (4th Cir.1992); *see also Hoffman v. Reali*, 973 F.2d 980, 984 (1st Cir.1992) (emphasis added) ("Absent dispute over *essential* underlying facts, a defendant's entitlement to qualified immunity is a question of law and is reserved for the court."). Additionally, given the important policy in favor of terminating insubstantial lawsuits against public officers, the court should be especially vigilant in enforcing the requirement that plaintiff substantiate

her allegations in the complaint. *See Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) (noting that in response to a motion for summary judgment, "plaintiffs may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits"); *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir.1988) (following *Martin*); *Martin v. District of Columbia Metropolitan Police Dept.*, 812 F.2d 1425, 1434 (D.C.Cir.1987), *vacated in part*, 817 F.2d 144 (D.C.Cir.1987), *reinstated Bartlett on Behalf of Neuman v. Bowen*, 824 F.2d 1240 (D.C.Cir.1987) ("[I]t is not the moving party's burden to disprove unsubstantiated claims of his opponent; that consideration has added force when, as in the area of concern in this case, the reasons for swiftly terminating insubstantial lawsuits are particularly strong.")

Therefore, the court must determine, on *plaintiff's* well-documented version of the facts, whether a reasonable officer in each defendant's position, to the extent that this defendant could be found to have some responsibility for the use of force in question, could have believed that the force employed was necessary to protect the safety of himself or others. *See Good*, 891 F.2d at 1092, 1094–95. If the answer to that question with respect to any of the defendants is in the affirmative, then summary judgment should be granted in his favor; by contrast, for those defendants to whom the answer is in the negative, summary judgment on qualified immunity grounds should be denied (though it may be raised anew once facts are further developed and explored at trial).

Accordingly, I will remand this case to Magistrate Judge Hall so that he can apply the new standard discussed above, indicating on which parts of the record he is relying for plaintiff's version of the facts.[12]

F.2d 1479, 1487 (11th Cir.1991); *Duncan v. Storie*, 869 F.2d 1100, 1103 (8th Cir.1989), *cert. denied*, 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 110 (1989); *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988).

**12.** In the objections as they came before me, defendants argued that some of the facts relied on by Magistrate Judge Hall were not facts of record, and I have no way of determining that one way or the other, as Magistrate Judge Hall did not include citations to the record.

Additionally, Magistrate Judge Hall did not address defendants' efforts to dismiss plaintiff's First and Fourteenth Amendment claims and § 1985 conspiracy claim against them,[13] and he will have an opportunity to do so on remand.

### ORDER

For the reasons given in the accompanying Memorandum, it is hereby ORDERED and DIRECTED that the Report and Recommendation will not be approved and adopted, and this case is remanded to Magistrate Judge Hall for further proceedings consistent with the accompanying Memorandum.

---

**13.** Insofar as these claims seek to challenge the same conduct underlying the excessive force claim, it may be that they can be grouped together for qualified immunity purposes. *See Gooden*, 954 F.2d at 969.