Gary A. DOLAN, Plaintiff,

v.

Eugene C. GOLLA et al., Defendants.

Civ. A. No. 78–270.

United States District Court,
M. D. Pennsylvania.

Dec. 13, 1979.

Gary A. Dolan, pro se.

Thomas B. Schmidt, III, Pepper, Hamilton & Scheetz, Harrisburg, Pa., for plaintiff.

Joseph F. Torsella, Berwick, Pa., Joey H. Storaska, Rice, Rice & Boop, Sunbury, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

## I. *INTRODUCTION*

This action was initiated on March 21, 1978 by the filing of a complaint alleging violation of Plaintiff's civil rights under 42 U.S.C. § 1983. On October 29–31, 1979 we conducted the nonjury trial of this matter. At the conclusion of their presentation of evidence, counsel for both sides were given fifteen days in while to file suggested findings of fact and conclusions of law. Both parties have properly filed their suggested findings. Upon our consideration of the testimony and exhibits presented to us in the trial, we believe that judgment should be entered for the Defendants.

## II. *FINDINGS OF FACT*

1. Plaintiff Gary A. Dolan is an inmate of the State Correctional Institution in Pittsburgh, Pennsylvania.

2. Defendant Eugene C. Golla is a police officer employed by the Borough of Berwick, and was so employed on March 30, 1977.

3. Defendant Mark E. Travelpiece was associated with the Berwick Police Department on March 30, 1977 as a student observer pursuant to an agreement between Travelpiece and the Borough that provided, *inter alia*, for his supervision by the Borough's chief of police.

4. Travelpiece was neither paid by nor insured through the Borough as part of this student observation program.

5. Travelpiece was not issued any police equipment.

6. Sometime late in the afternoon or early in the evening of March 30, 1977, Dolan parked a black Chevrolet van on Hillside Drive in the Borough of Berwick.

7. Dolan walked from the van to his parents' residence in nearby apartments and remained there until sometime after 11:00 p. m.

8. Dolan carried a sack with something in it as he walked from the van.

9. Travelpiece began work on March 30, 1977 at approximately 5:00 p. m.

10. In the early evening of March 30, 1977, the Berwick Police Department received calls expressing concern with the black van parked on Hillside Drive and its occupant, who was seen leaving the van.

11. Travelpiece accompanied Officer Hampton of the Berwick Police Department to inspect the van in response to the calls.

12. When Golla came on duty on March 30, 1977, he and Hampton went to Hillside Drive and inspected the van.

13. Golla and Hampton found the doors of the van were locked, but they saw the contents of the van through its windows with the aid of a flashlight.

14. Golla noted that the van was parked in front of a home whose owner was absent and that the van contained tools frequently used in thefts of automobiles.

15. Upon his return to the police station, Golla telephoned the Bloomsburg Police Department and learned that the driver of the van was probably Dolan and that the Bloomsburg police were interested in his activities because he was a parolee.

16. At approximately the same time that he called Bloomsburg, Golla determined that there were no outstanding warrants for the arrest of Dolan.

17. Neither Golla nor any other member of the Berwick Police Department applied for a warrant to search the van.

18. Golla and Travelpiece then resumed their regular patrol, although they returned to the Hillside Drive area more frequently than usual.

19. At approximately 11:00 p. m., Dolan returned to the van and one of the residents in the area contacted the Berwick police to inform them that the operator of the van had returned.

20. The radio dispatcher contacted Golla and he and Travelpiece returned to Hillside Drive with the red flashing light on the top of his dashboard activated and operating and clearly visible from outside of his vehicle.

21. Golla stopped his police vehicle immediately behind the van.

22. Golla intended to stop Dolan's van and ask for his identification and an explanation of his activities.

23. At all times during the evening of March 30, 1977, Dolan had in his van a controlled substance and a loaded automatic handgun, possession of the latter being a violation of his parole conditions.

24. Dolan pulled away from the curb, executed a turn in a driveway, and travelled past the police vehicle without stopping, although he observed the flashing red light and a police officer.

25. Although Golla had seen Dolan on prior occasions, he did not recognize him that evening because of Dolan's beard and long hair.

26. Golla pursued the van and observed the operator drive through a stop sign and proceed in a reckless manner causing a vehicle driven by a third party to be driven off the road.

27. On the basis of these traffic violations and upon direction of the officer in charge of the shift on that night, Golla continued to pursue the van beyond the limits of the Borough of Berwick.

28. Soon after proceeding beyond the limits of Berwick, Golla activated the siren in his vehicle and followed Dolan for several miles with both the red flashing light and the siren activated and operating.

29. The pursuit had covered approximately six miles when Dolan turned into the lane of the Franklin Barnes property, Briar Creek Township, Pennsylvania.

30. Golla then followed the van up the lane toward the Barnes residence, around the residence, and into open fields adjacent to and beyond the residence.

31. Golla pursued the van through the open fields.

32. In the pursuit through the fields, Dolan rammed the police vehicle occupied by Golla and Travelpiece on three occasions.

33. From the first and most violent of those ramming incidents, Golla and Travelpiece were alarmed and believed that Dolan was attempting to cause them severe bodily harm or death.

34. Golla, continuing to operate the police vehicle in pursuit of the van, directed Travelpiece to shoot the left rear tire of the van with Golla's handgun to incapacitate and stop the van.

35. Travelpiece fired one shot at the tire, missing the van completely.

36. Dolan returned to the farmhouse lane momentarily, but then turned again into the fields striking the police vehicle headon.

37. Dolan once again returned to the lane and proceeded past the farmhouse when the van became lodged in the soft, muddy shoulder of the lane.

38. Golla stopped his police vehicle immediately behind the van.

39. Golla left the police vehicle and approached the driver's side of the van with his flashlight and gun drawn.

40. The driver's side door window was open approximately four to six inches.

41. Golla ordered Dolan to get out of the van, but Dolan refused, asking for the presence of more police officers.

42. Dolan remained seated in the van, with both hands in full view on the steering wheel or dashboard.

43. Golla attempted to open both the driver's side and the passenger's side doors, but both were locked.

44. Upon returning to the driver's side of the van, Golla repeated his order to Dolan to get out of the van and Dolan repeated his desire to wait for additional police officers.

45. Travelpiece had meanwhile called on the police radio to inform other officers of the location, and was told that some officers were near the lane to the Barnes' farm.

46. While Golla attempted to reach in the window to unlock the driver's door, Dolan turned with an automatic pistol in his right hand and fired a number of shots, one of which hit Golla in the chest knocking him to the ground.

47. Golla believed that Dolan was continuing to attempt to leave from the area and acted in concern for his own safety as well as that of Travelpiece, by firing one shot from a prone or rising position and two more shots while approaching the van, striking Dolan in the buttocks and in each arm.

48. Golla had to be subdued by Travelpiece following the firing of these three shots because he was greatly agitated.

49. Soon after the shooting, other members of various police departments arrived on the scene to assist the parties.

50. Golla and Travelpiece participated in the criminal prosecution of Dolan for a variety of offenses.

51. On June 2, 1977, at a suppression hearing conducted in the criminal proceedings against Dolan, Golla and Travelpiece testified about the circumstances of their pursuit of Dolan, the collision, and the shooting at the Barnes farm.

## III. DISCUSSION

■ For Plaintiff to succeed in this action under 42 U.S.C. § 1983, he must establish two elements: (1) Defendants Golla and Travelpiece acted under color of state law and (2) Defendants Golla and Travelpiece deprived him of a right or rights secured by the United States Constitution. *Adickes v. S. H. Kress & Company*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). De-

fendant Golla does not contest the allegation that he was at all relevant times acting under color of state law. Although we believe that Defendant Travelpiece might properly be considered to have acted under color of state law, we will not finally decide that issue. For the purposes of the following discussion, however, we will assume it is so. The question then becomes whether Defendants acted to deprive Plaintiff of a right or rights secured by the United States Constitution.

In his trial brief, Plaintiff lists four violations of his constitutional rights. The alleged violations are: (1) Attempt to arrest Plaintiff without probable cause—Violation of Fourth Amendment; (2) Use of excessive force against Plaintiff; (3) Attempt to cover up the truth of the events of March 30, 1977—Fourteenth Amendment; and (4) Conspiring to violate the above rights.

The first of the alleged constitutional violations must be dismissed on an analysis of the applicable law to the findings of fact. Plaintiff alleges that Defendants' attempts to *arrest* him on Hillside Drive without probable cause violated his rights under the Fourth Amendment to the Constitution. But we adopted Plaintiff's suggested finding # 17 as our finding # 22: "Golla intended to stop Dolan's van and *ask for his identification and an explanation of his activities.*" Clearly Defendants never intended to arrest the operator of the van. Defendants responded to the concerned telephone calls of residents of the Hillside Drive neighborhood. A strange van was parked in front of an unoccupied home. A strange man was seen carrying a sack over his shoulder. The residents' primary concern was for their own well-being and that of their children. When the police investigated the van and saw equipment and materials in plain view that could be used in the theft of automobiles, they became suspicious. Their suspicions grew when they learned that the suspected operator of the van had been convicted of receiving stolen goods and was out of prison on parole. ▮ Because of their knowledge and because of the concerned requests of the local citizens, the police intended to question the operator of the van. This was not a random stop of a passerby. No search was anticipated. No arrest was anticipated. Anytime a police officer accosts an individual and restrains his freedom to walk away, however, he has "seized" that person and the Fourth Amendment requires that the seizure be reasonable. *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonableness of seizures that are less intrusive than a traditional arrest depends on a balance between the public interest and the individual's right to personal freedom from arbitrary interference by law officers. *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Consideration of the propriety of such seizures requires weighing the gravity of the public concern served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *United States v. Brignoni-Ponce,* 422 U.S. 873, 878–83, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

▮ The Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual. *Brown v. Texas,* —— U.S. ——, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). We are firmly convinced that the facts related above were sufficiently specific, objective, and articulable to satisfy any of the tests. We weigh the interest of the police in reacting to citizens' legitimate concerns about a suspicious person in the neighborhood and in reacting to their own reasonable suspicions about potential criminal activity and find it an important governmental interest. That interest is furthered by the type of seizure anticipated here: A simple questioning and identification of Plaintiff would certainly advance the government's interest by negating or confirming those suspicions in a short time. The interest to the public is not outweighed by the anticipated minimal intrusion into the Plaintiff's privacy. Plaintiff's first contention must therefore be rejected.

■ The second alleged violation of Plaintiff's constitutional rights is the assertion that Defendants acted with excessive, unreasonable force in their apprehension of Plaintiff. This allegation must also fall in light of the facts of the case. We agree with Judge Troutman's opinion that a police officer may not use force which far exceeds that which is reasonable and necessary under the circumstances to make the arrest. *Hausman v. Tredinnick*, 432 F.Supp. 1160, 1162 (E.D.Pa.1977). *Accord, Howell v. Cataldi*, 464 F.2d 272, 282 (3d Cir. 1972). But we believe that Defendants' use of force in the pursuit of Plaintiff was reasonable and necessary.

■ Defendants' use of force was confined to two instances of firing shots from a handgun at or near Plaintiff. The first time Defendants used the gun was in the field when Travelpiece shot at the left rear tire of the van. This shot was undertaken only after Plaintiff had placed both Defendants in fear of severe bodily harm or loss of life by the first ramming. Because Defendants reasonably believed they were in imminent danger of serious bodily injury, they were justified in the use of deadly force according to the Pennsylvania Crimes Code, Act of December 6, 1972, § 1, 18 Pa.C.S.A. § 508(a)(1). *See generally*, Comment, *Justifiable Use of Deadly Force in Law Enforcement*, 78 Dick.L.Rev. 115 (1973).

Whether the Pennsylvania Crimes Code permits deadly force or not, however, Defendants were justified in attempting to shoot out Plaintiff's tire as they did. They had a reasonable belief, subsequently borne out, that Plaintiff might again ram them and try to disable or injure them to make good his escape. Golla maneuvered his vehicle until it was four or five feet from the side of the van travelling roughly parallel to it. Golla's passenger side door was aligned with the left rear tire of the van. Travelpiece held Golla's revolver out his window and pointed it down at approximately a 45 degree angle aiming at the tire. The positioning of the vehicles and the abandonment of the attempt after firing the first shot indicate the reasonableness of the Defendants' actions. They were not firing blindly at the van to stop it. They attempted a single, unsuccessful shot at a tire to stop the van without injuring its operator. When they realized the difficulty of stopping Plaintiff in that fashion, they ceased their attempts. Their use of force in the first instance was clearly reasonable and justified and was not excessive.

■ The second instance of the use of force by Defendants occurred after · the Plaintiff ran the van off the road into the muddy shoulder. The van was stuck and Defendants pulled up behind it to apprehend the Plaintiff. We found as a fact in this case that Plaintiff initiated the gun battle by firing an entire round of shots at Defendants. One of the shots hit Golla in the chest and the shattered glass from the van's window, blown out by Plaintiff's shots, cut Golla's face causing substantial bleeding. Again we refer to the Pennsylvania Crimes Code and its permission of the use of deadly force when an officer believes his life or the life of another is endangered. 18 Pa.C.S.A. § 508(a)(1). Deadly force is also permitted when it is necessary to stop the escape of a person who is to be arrested for committing a forcible felony or who is attempting to escape and possesses a deadly weapon. 18 Pa.C.S.A. § 508(a)(1)(i) & (ii).

Under any of the three requirements of section 508(a)(1), Golla was justified in the use of deadly force against Plaintiff. He feared his life and Travelpiece's were in jeopardy by Plaintiff's actions. He feared that Plaintiff would escape and cause injury to others. He knew Plaintiff had committed a forcible felony and possessed a deadly weapon. Golla fired three shots at the cab of the van as soon as possible to stop Plaintiff. The shots he fired hit Plaintiff in the buttocks and arms. Golla was fully justified in the type of force he used in the circumstances in which he found himself.

■ The third and fourth contentions of constitutional violations by Defendants can be combined into an allegation of a conspiracy to commit perjury to cover up the allegedly unlawful activities of March 30,

1977. This coverup would certainly violate Plaintiff's due process rights under the Fourteenth Amendment if it were substantiated by the evidence. *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir. 1970). Because we found no evidence indicating to us any misstatements by Defendants in previous hearings or investigations and because we believe that Defendants committed no unlawful acts on March 30, 1977, we reject these latter two allegations.

All of Plaintiff's allegations of violation of his constitutional rights are groundless and we therefore find no proper claim under 42 U.S.C. § 1983. An appropriate order will follow.

## IV. *CONCLUSIONS OF LAW*

1. This court has jurisdiction of this action by virtue of 28 U.S.C. §§ 1331 and 1343(3) & (4).

2. Eugene Golla at all times relevant to Plaintiff's claim was an officer of the Berwick Police Department and was acting under color of state law pursuant to 42 U.S.C. § 1983.

3. Defendants had specific, objective, articulable facts on which to base their intended questioning of Dolan.

4. Defendants' use of force was at all times reasonable and not excessive under the exigent circumstances with which they were faced.

5. Defendants did not attempt to cover up any unlawful, unconstitutional activity.

6. Defendants did not conspire to violate Dolan's constitutional rights.