**Troy WILLIAMS, Plaintiff,**

v.

**Ronnie ADAMS, Defendant.**

**No. S 89–51 C.**

United States District Court,
E.D. Missouri,
Southeastern Division.

Oct. 31, 1991.

Troy Williams, pro se.

John L. Oliver, Jr., Oliver, Oliver, Waltz & Cook, Cape Girardeau, Mo., for defendant.

MEMORANDUM OPINION
AND JUDGMENT

LIMBAUGH, District Judge.

This non-jury trial was heard October 23, 1991. The case involved a 42 U.S.C. § 1983 claim for damages allegedly sustained by plaintiff because of excessive force used by defendant during an arrest, as well as assault. Plaintiff urged that defendant struck him during the course of an arrest causing him to have injuries on his head, and later hit him after he had been arrested knocking him unconscious. Defendant averred that he had participated with other officers in making a lawful arrest and did use some force in affecting the arrest but no more than was reasonably necessary to subdue plaintiff, and he denies that he was involved in any assault on the plaintiff.

The parties in pretrial response had listed the same witnesses and plaintiff called all witnesses and defendant cross-examined them through counsel, and exhibits were received and the matter then submitted to the court.

The witnesses called were the parties, Thomas Taylor of the Missouri Highway Patrol and Ray Gurley who was a trustee at the jail when plaintiff was arrested. Exhibits included various records of statements made by plaintiff at the time of his arrest, offense reports and medical records of the plaintiff and certain letters written by him.

The following constitutes findings of fact and conclusions of law as required by rule.

Plaintiff is a 35–year old, 5′ 11″ male, weighing 190 pounds. He was an over-the-road truck driver for Tri–State Motor Transit Co.

On February 6, 1984, plaintiff was driving north on Interstate 55 in a tractor-

trailer unit carrying a load to a Michigan address. He had passed Blytheville, Arkansas and proceeded north into Missouri and approached a weigh-scale located on Interstate 55 just north of the Arkansas line in Pemiscot County, Missouri. As his unit had oversized steel beams, plaintiff was required to stop at the weigh-scale. Plaintiff drove across the weigh-scale but decided not to stop and he left the station and proceeded north on I-55. Plaintiff testified that he had seen irregular activity at the weigh-station and did not want to come in contact with Missouri lawmen and that was why he did not stop.

The officials at the weigh-station noticing that plaintiff did not stop and was proceeding north on the highway radioed law enforcement officials of the incident, requesting that he be intercepted. Thomas D. Greenwell, a member of the Hayti, Missouri police department heard the broadcast and attempted to intercept plaintiff by pulling behind his vehicle just north of the 16 mile marker. Plaintiff had failed to stop for the red-lights. Greenwell attempted to pull in front of plaintiff's vehicle but seeing that the tractor-trailer was going to ram his automobile, he backed off. Greenwell pursued plaintiff and radioed for additional assistance.

Hearing the broadcast, two other municipal officers from Caruthersville, Missouri, Police Chief McKay and Officer Malone joined in the pursuit. These officers, with Greenwell, attempted to bracket and slow the plaintiff but were unsuccessful.

This incident occurred on February 6, 1984, and during the course of the pursuit Thomas Taylor, a corporal of the Missouri Highway Patrol, also heard the radio broadcast for assistance, and joined the pursuit just south of the Wardell Overpass on I-55. All vehicles were pursuing plaintiff with red lights and sirens. Taylor pulled up beside plaintiff and attempted to flag him down to no avail.

A road block was set up one mile north of the Route A interchange with I-55 but plaintiff did not stop nor attempt to avoid the road block. He passed through it, and at the time, Taylor fired into the grill of the truck to no avail.

A second road block was set up at the Route T overpass. The officers indicated their willingness to fire again and plaintiff's truck stopped. At that point, officers Greenwell, McKay, Malone and another officer, Joe Moore, were present. Williams exited his vehicle and walked to the front to look at the grill of the truck into which Officer Taylor had fired. He then walked back and began to enter the cab of the truck. At that point, Officer Taylor and others told plaintiff that he was under arrest, but plaintiff refused to respond and in the process was restrained by the officers.

During the process when the officers were attempting to arrest plaintiff who was resisting, defendant arrived in answer to the radio dispatch. Defendant was the Chief of Police of Portageville, Missouri and was acting under color of law as a police officer.

The testimony of defendant and Taylor and the arrest records revealed that plaintiff resisted vigorously and forcefully, and it took five of the officers to subdue him.

During the episode, one officer would hold one of plaintiff's arms, and another the other, and another held one of his legs, etc., all the while plaintiff was struggling and on several occasions, the parties were on the ground wrestling with each other.

After some time, plaintiff was subdued and handcuffed and placed in defendant's police vehicle for the purpose of transportation to Caruthersville and the Pemiscot County, Mo. jail. During the scuffle, plaintiff received some cuts to his forehead and on the top of his head. Some of the other officers had cuts on their hands and face, all brought about as a result of the struggle. Defendant's shirt was torn during the scuffle and his watch was damaged and he lost his keys.

Defendant and Officer Taylor, the latter of which was not sued, both testified that

although they used force as did the other officers, no more force was used than was necessary to subdue plaintiff in order to effectuate the arrest.

Defendant and Officer Williams drove plaintiff to the Pemiscot County Jail, where he was lodged and charges were filed.

Officer Taylor testified that he later visited the plaintiff in the jail and that he had a towel around his head but was conscious and was complaining about a cut on his head, which he observed. His clothing did not appear out of the ordinary and was not torn. He estimated that it took defendant approximately 15 minutes to drive plaintiff from the scene of the arrest to the Pemiscot County Jail.

Roy Gurley was a trustee in the jail and visited plaintiff shortly after his placement there. He testified that plaintiff appeared intoxicated and that he did have a scratch on his left forehead and some blood. He did not notice his clothes being torn and he gave plaintiff a towel for the blood but the scratch was superficial and the towel was supplied simply because it was the only thing he had available with which to assist him.

Defendant testified that when plaintiff was placed in the jail he was conscious and not bleeding, and appeared reasonably normal. He denied ever striking plaintiff, at any time, but averred that he did wrestle with him, along with the other officers, in the attempt to subdue plaintiff at the time of the arrest. He denied that he used force more than reasonably necessary in effectuating the arrest.

The arrest report and some of the other documents reveal that during the arrest process plaintiff was, in fact, struck and was forced to the ground where he sustained bruises, cuts and lacerations.

Plaintiff testified that he did pass the weigh-station because of an unusual event and was concerned about coming in contact with law enforcement officers. He was aware that officers had pursued him to the point where he saw a road block and then someone shot at the radiator of his truck.

Nevertheless, he continued on, but stopped at the second road block. He stated that when he saw Officer Taylor point the gun at him at the road block he froze.

Plaintiff testified that when he exited the cab of the truck, some officer hit him two times. He did not resist and was placed under arrest, in handcuffs, in a police car. He never could identify the defendant but two officers did drive him from the scene of the arrest to the Pemiscot County, Jail. He testified that the officers took him to the levy at the river and one of them took something from the floor and hit him on the head and he lost consciousness, and woke up in the jail. He had blood all over his face, and his clothes were torn. He stated that trustee Gurley gave him a towel which he used to remove the blood, but as a result of this began having headaches and is still having them. He felt as though he has been shot in the head.

He testified that he later called defendant, and asked him why he had knocked him unconscious, and defendant replied because plaintiff broke his watch during the arrest. Defendant denied this telephone call.

Plaintiff was charged in the State of Missouri court in Pemiscot County with resisting arrest and first-degree assault. At the time he appeared before Circuit Judge Gene Reeves, he told him he was the President of the United States. He was ultimately found not-guilty by reason of mental disease or defect, excluding responsibility and was ordered committed to the State of Missouri Department of Mental Health. Plaintiff has remained in a mental health program in various State of Missouri institutions up to the day of trial.

At the time of trial, plaintiff appeared oriented, understood the questions and was able to answer with clarity. He admitted that at the time he stated that he was not only knocked unconscious, but that he had been shot in the head three times and remembered that he had told Judge Reeves that he was the President of the United States. At the time of trial, plaintiff con-

tinued to allege that he was struck by the defendant and knocked unconscious, but he readily admitted that he had not been shot in the head and that he was not the President of the United States. He was aware that he has had mental problems in the past, and realized that in the past he has had delusions and that he is currently diagnosed as a paranoid schizophrenic. He pointed to three scars on his head which the Court had difficulty seeing, but which plaintiff stated resulted from the alleged assault of him by defendant.

Numerous medical records do reveal that plaintiff has been treated on many occasions for mental illness and has, in the past, had delusions and continues to suffer from mental illness. Irrespective of these records, it appeared at the time of trial that the plaintiff was quite well oriented and certainly understood what was happening and knew how to testify and present his case.

Plaintiff's medical records, many of which involved analysis, diagnosis and treatment, following the arrest did not reveal that there were significant injuries to plaintiff.

■ The Court finds that there was force used during the course of the arrest of plaintiff by defendant and the other officers. Nonetheless, the Court further determines that the arrest was lawful and that no more force was used than was reasonably necessary to effectuate the arrest.

The Court has jurisdiction over the subject matter of this case pursuant to the provisions of 28 U.S.C. § 1334. Defendant was, in fact, acting under color of law as that phrase is relevant under 42 U.S.C. § 1983.

■ Claims that law enforcement officers have used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Determining whether the force used to effect a particular arrest is reasonable under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Graham*, 109 S.Ct. at 1871 (citations omitted). The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 109 S.Ct. at 1871.

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime of issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Graham*, 109 S.Ct. at 1871–72.

Defendants' actions under the circumstances were justified. Plaintiff had already shown his willingness to ram a police car with his tractor-trailer. He passed through a roadblock while police cars pursued him with lights and sirens on. These actions indicated plaintiff was a danger to the officers and others on the roadway. As plaintiff drove through the roadblock, one officer shot into the grill of his truck. It was not until he approached a second roadblock and saw another officer with a gun that plaintiff stopped. A scuffle ensued as the officers subdued plaintiff, handcuffed him and placed him in the police car to transport him to jail.[1] Defen-

---

1. The Court discredits plaintiff's testimony regarding being taken to the levy and struck on the head.

dants' use of force under the circumstances was reasonable. *See Dolan v. Golla*, 481 F.Supp. 475, 480 (M.D.Penn.1979), *aff'd* 633 F.2d 209 (3d Cir.1980) (firing shots at vehicles tire after driver had rammed vehicle into police car was reasonable).

The Court finds that the force utilized by defendant and the other officers was, in fact, reasonably necessary, not only to complete the arrest but to restrain plaintiff from continuing to proceed further north in his motor vehicle.

For the foregoing reasons, the Court enters judgment in favor of defendants and against plaintiff on the merits of plaintiff's complaint.