

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-23-1995

# Vance v Lehman

Precedential or Non-Precedential:

Docket 94-1766

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Vance v Lehman" (1995). *1995 Decisions.* Paper 234.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/234

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NO. 94-1766

RUSSELL L. VANCE

v.

JOSEPH LEHMAN, COMMISSIONER, DEPARTMENT OF CORRECTIONS;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA;
THE DISTRICT ATTORNEY FOR PHILADELPHIA COUNTY

Russell Vance,
Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 94-cv-00997)

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 13, 1995

BEFORE:  STAPLETON, GREENBERG and COWEN, Circuit Judges

(Opinion Filed August 23, 1995)

Daniel M. Preminger
Suite 1050
42 South 15th Street
Robinson Building
Philadelphia, PA  19102
  Attorney for Appellant

Deborah Fleisher
Assistant District Attorney
Donna G. Zucker
Chief, Federal Litigation
Ronald Eisenberg
Deputy District Attorney
Arnold H. Gordon
First Assistant District Attorney
Lynne Abraham
District Attorney

1

1421 Arch Street
Philadelphia, PA  19102-1582
Attorneys for Appellees


OPINION OF THE COURT



STAPLETON, Circuit Judge:


Petitioner-appellant Vance was convicted of murder in the Philadelphia Court of Common Pleas. In this habeas corpus proceeding, he collaterally attacks the validity of his conviction on the ground that he did not receive the "Assistance of Counsel for his defence" as mandated by the Sixth Amendment. The license of Vance's lawyer to practice law in Pennsylvania was "revoked" shortly after the conclusion of his representation of Vance because he had made material misrepresentations of fact on his application for admission to the Pennsylvania Bar. The district court declined to grant relief, and for the reasons that follow, we will affirm.


I.

Russell Vance was charged with the murder and involuntary manslaughter of his landlord, as well as with robbery and possession of an instrument of crime. Vance engaged the services of Lewis Small, Esquire, to represent him in connection with these charges. Small turned the matter over to an associate in his office, Richard Potack, Esquire, who was ultimately appointed by the court to represent Vance on April 15, 1985.

2

After a two day suppression hearing and other pretrial proceedings, a jury was selected in early February of 1986. After opening arguments and the calling of the first witness, Vance decided to enter a plea of guilty to the murder charge. The court then conducted a three day degree of guilt hearing, found Vance guilty of murder in the first degree, and sentenced him to life imprisonment.

Several days later, Vance filed a pro se motion to withdraw his guilty plea, and subsequently, he submitted an amended motion alleging ineffective assistance of counsel. A new attorney was appointed to represent Vance, and the court held an evidentiary hearing. Ultimately, it vacated Vance's sentence and granted his motion to withdraw his plea. The Commonwealth appealed. The Pennsylvania Superior Court reversed and reinstated the judgment of sentence, Commonwealth v. Vance, 546 A.2d 632 (Pa. Super. Ct. 1988). Vance filed a Petition for Allowance of Appeal to the Supreme Court which was denied. Commonwealth v. Vance, 557 A.2d 723 (Pa. 1989). After an unsuccessful post-conviction relief proceeding in the state courts, Vance filed this federal habeas proceeding.

The record reveals a number of facts about Vance's counsel of which Vance and the trial judge were unaware at the time of trial. Potack graduated from Howard University School of Law in May of 1975 and passed the California Bar Examination that summer. He was admitted to the California Bar in December of 1975 and practiced law in that state for the next eight years. His practice included criminal defense representations.

3

Potack began using cocaine regularly in 1980. Between mid-1981 and the fall of 1983, former clients filed at least ten complaints against him with the California disciplinary authorities. In November of 1983, while these matters were under investigation, Potack voluntarily ceased practicing law in California, and in December, moved to Philadelphia.

Potack successfully took the Pennsylvania Bar examination in February of 1984 and was admitted to that bar in May. On his application for permission to take the bar examination, he falsely represented that no charges for professional misconduct were presently pending against him, that no such charges had been filed in the past, and that he had not undergone treatment for the use of drugs. In addition, he represented that he had not been arrested or prosecuted for any crime when he knew there were outstanding warrants for his arrest for passing worthless checks in California.

Two weeks after he began his representation of Vance, Potack entered a stipulation with the California disciplinary authorities regarding the professional misconduct complaints against him. He stipulated that while he was an attorney, he had (1) withdrawn from employment without refunding unearned fees paid in advance in four cases; (2) represented clients with conflicting interest without obtaining the consent of all concerned parties; (3) failed to use reasonable diligence and his best judgment for the purpose for which he was employed in four cases; and (4) failed to deposit funds received on behalf of a client in a separate, identifiable bank account. On June 21,

4

1985, the disciplinary authorities recommended to the California Supreme Court that Potack be suspended from the practice of law for three years, that the suspension be stayed, and that he be placed on probation on the conditions that he serve a one year suspension, make restitution, pass the professional responsibility examination, and participate in a drug rehabilitation program. The record does not disclose the date upon which Potack's suspension in California commenced.

On January 13, 1986, approximately three weeks before the jury was selected for Vance's trial, the Pennsylvania State Board of Law Examiners petitioned the Pennsylvania Supreme Court to revoke Potack's admission to the bar. The Board's petition alleged that if it had known of Potack's failure to truthfully answer questions inquiring into professional and criminal misconduct and narcotics abuse, it would not have given him permission to sit for the Pennsylvania Bar Exam and would have found that he did not meet the Board's character standards to practice law. The Supreme Court of Pennsylvania granted the Board's "Petition to Revoke Admission to the Bar" on April 16, 1986.

When Vance's trial judge vacated his sentence and permitted him to withdraw his guilty plea, she acted in part based on her view that the April 16, 1986 order of the Pennsylvania Supreme Court had the "effect of making [Potack's] membership in the Pennsylvania Bar void ab initio." App. 44D. Citing People v. Washington, 384 N.Y.S.2d 691 (N.Y. Sup. Ct. 1976), for the proposition that the term "counsel" in the Sixth

5

Amendment referred to "a duly licensed lawyer and nothing less," id. at 692, she held that Vance had not received the constitutionally required assistance of counsel for his defense. App. 44D, 52D.

The Superior Court took a different view of the predicate state law issue. It rejected the view that Potack's membership in the Pennsylvania Bar had been void ab initio. Commonwealth v. Vance, 546 A.2d at 636. Accordingly, it held that "[a]t the time Mr. Potack represented [Vance], he was a member of the Pennsylvania Bar" and authorized by Pennsylvania law to conduct Vance's defense. Id. at 635.

II.

Vance's federal habeas corpus petition does not seek relief on the ground that Potack did or failed to do something during his representation of Vance that breached his professional responsibilities in a way that prejudiced the defense of the case. Vance's brief before us tacitly recognizes that the record will not support a contention that he is entitled to a new trial under the standard announced in Strickland v. Washington, 466 U.S. 668 (1984); the record does not affirmatively show that counsel's performance was deficient and that this deficient performance prejudiced the defense. Rather, Vance presses the theory accepted by the Court of Common Pleas: the representation by Potack was a per se violation of the Sixth Amendment without regard to the quality of his performance.

6

We begin our analysis of Vance's contentions with the basic principles underlying right to counsel jurisprudence.

> The right to the effective assistance of counsel is . . . the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted -- even if defense counsel may have made demonstrable errors -- the kind of testing envisioned by the Sixth Amendment has occurred.

United States v. Cronic, 466 U.S. 648, 656 (1984) (footnote omitted). Accordingly, "[a]bsent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." Id. at 658. Nevertheless, as Vance stresses, there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Id.

The circumstances in which prejudice has been found so likely as to be presumed are very rare. The Court in Cronic set forth a few examples that illustrate the degree of risk of prejudice that must be present before its demonstration is excused. If the defendant has no representation of any kind, his conviction is per se invalid. Id. at 659. The same is true if, for any reason, the defendant's counsel is prevented from assisting him during a critical stage of the proceeding. Id. "Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing [by foregoing cross-examination of the prosecutor's witnesses], then there has been a denial of the Sixth Amendment rights that makes

7

the adversary process itself presumptively unreliable." Id. (citing Davis v. Alaska, 415 U.S. 308 (1974)).

Another situation which would warrant the application of a per se rule finding a violation of the Sixth Amendment is where the defendant is represented by someone with little or no legal training who is masquerading as an attorney. See Harrison v. United States, 387 F.2d 203, 212 (D.C. Cir. 1967) ("layman masquerading as a qualified attorney" cannot provide assistance of counsel), rev'd on other grounds, 392 U.S. 219 (1968); People v. Felder, 391 N.E.2d 1274, 1275 (N.Y. 1979) (assistance of counsel denied where legal representative was not a member of the bar and had not completed law school); Cf. United States v. Wilhelm, 570 F.2d 461, 465 (3d Cir. 1978) ("Counsel" within the meaning of the Sixth Amendment contemplates one with professional qualifications, not lay persons). While Vance acknowledges that there is a difference between such an imposter and one in Potack's position, he insists that the likelihood of prejudice to his case was sufficiently great to warrant the same result.

The courts have consistently looked to the licensing authorities of the legal profession to determine in circumstances of this kind the boundaries of the per se exception to the Strickland rule. If a lawyer is authorized by those authorities to practice law, his or her performance on a criminal defendant's behalf is acceptable for Sixth Amendment purposes so long as the Strickland criteria are not met. See Reese v. Peters, 926 F.2d 668, 670 (7th Cir. 1991) ("The constitutional question is whether the court has satisfied itself of the advocate's competence and

8

authorized him to practice law."); Bellamy v. Cogdell, 974 F.2d 302, 306-07 (2d Cir. 1992) (en banc) (per se rule only applied where lawyer is not licensed or where there is conflict of interest), cert. denied, 113 S. Ct. 1383 (1993).  See also United States v. Stevens, 978 F.2d 565, 568 (10th Cir. 1992) (lawyer disbarred from federal court but not from state court provides assistance of counsel in federal trial); United States v. Hoffman, 733 F.2d 596 (9th Cir.) (representation in federal court by one suspended from practice by state bar not equivalent to representation by one who has never been qualified to practice in any jurisdiction), cert. denied, 469 U.S. 1039 (1984).  On the other hand, with exceptions for licensing defects unrelated to a person's competence to practice law,[1] the courts have generally viewed representation by someone not authorized to practice law as a per se violation of the Sixth Amendment.  Reese, 926 F.2d 668; United States v. Novak, 903 F.2d 883 (2d Cir. 1990); United States v. Mouzin, 785 F.2d 682, 697 (9th Cir.), cert. denied, 479 U.S. 985 (1986); Solina v. United States, 709 F.2d 160 (2d Cir. 1983); People v. Felder, 391 N.E.2d 1274 (N.Y. 1979); Huckelbury v. State, 337 So.2d 400 (Fla. Dist. Ct. App. 1976).

---

[1] E.g., Reese v. Peters, 926 F.2d 668 (7th Cir. 1991) (suspension for failure to pay bar dues); United States v. Costanzo, 740 F.2d 251 (3d Cir. 1984) (failure to be admitted pro hac vice), cert. denied, 472 U.S. 1017 (1985); Wilson v. People, 652 P.2d 595 (Colo. 1982) (representative met substantive requirements but failed to take the formal oath for membership in the bar), cert. denied, 459 U.S. 1218 (1983); Ex parte Engle, 418 S.W.2d 671 (Tex. Crim. App. 1967) (representation begun before formal admission to bar took place).  But see McKenzie v. Ellis, 287 F.2d 549, 551 (5th Cir. 1961) (representation by attorney who failed to pay state bar dues and was therefore not authorized to practice constituted violation of due process).

In this case, Pennsylvania's intermediate appellate court has held that under Pennsylvania law, Potack was authorized to practice before the courts of that state at the time he represented Vance. Pennsylvania's highest court has declined to review that decision and Vance has pointed to nothing suggesting that that court would reach a different result were it to consider the issue. Under these circumstances, we accept the holding of the Superior Court as the law of Pennsylvania. See West v. American Tel. & Tel. Co., 311 U.S. 223, 236-237 (1940).

Vance acknowledges that Sixth Amendment jurisprudence has traditionally looked to the licensing authorities of the legal profession to set the boundaries of the per se violation rule. He insists, however, that Potack's state-conferred authority should not control here for two reasons. First, Vance points to the allegation of the Board's petition that it would not have recommended his admission to the Pennsylvania Bar had it known that he had lied on his application. Second, he asserts that Potack was laboring under a conflict of interest during his representation of Vance. Neither of these arguments persuades us that the risks of prejudice to Vance were sufficient to warrant application of the per se rule. Moreover, we believe that application of the per se exception in circumstances of this kind would impose an intolerable burden on trial courts and create an intolerable degree of uncertainty about the finality of criminal judgments.

Potack was far from an untrained imposter. He was a graduate of an accredited law school, he had been certified by

the California Bar authorities as competent to practice law in a process untainted by misrepresentation, he had practiced law for over a decade, and he had been tested and found knowledgeable about Pennsylvania practice and procedure. The only thing that distinguished him from the majority of attorneys who represent defendants day in and day out in our criminal justice system was that he had been guilty of prior, but unrelated, breaches of his professional responsibility.

As Vance stresses, during the representation, Potack had stipulated to having breached his professional responsibility to several former California clients and stood accused of having lied on his Pennsylvania Bar Exam application. These were serious breaches of professional ethics. They cannot be, and have not been, condoned. At the same time, experience has taught that lawyers, like other human beings, occasionally fall from grace. This is an unfortunate fact of life and is, of course, one of the principal reasons why the legal profession has disciplinary systems. Our courts have traditionally relied upon these systems to adjudicate and evaluate alleged professional defalcations. As a result, where breaches of professional responsibility are unrelated to the representation of the defendant, courts have not regarded the imposition of sanctions as relevant to the adequacy of an attorney's representation and have not given disbarment orders retroactive effect for Sixth Amendment purposes. United States v. Mouzin, 785 F.2d 682, 698 (9th Cir.), cert. denied, 479 U.S. 985 (1986). In those instances where lawyers have been sanctioned or disbarred for

11

conduct predating but unrelated to a criminal representation, the risk to the defendant has not been considered sufficient to warrant application of the per se rule. Waterhouse v. Rodriguez, 848 F.2d 375, 383 (2d Cir. 1988) (disbarment of defendant's counsel during pretrial suppression hearing did not result in denial of defendant's Sixth Amendment right to effective assistance of counsel where attorney was member of bar when hearing began and ceased representation immediately after learning of disbarment); Mouzin, 785 F.2d at 698 (disbarment from court of appeals for conduct unrelated to ongoing representation in district court does not render such representation ineffective); Roach v. Martin, 757 F.2d 1463, 1479-80 (4th Cir.), cert. denied, 474 U.S. 865 (1985) (state bar authorities' investigation of lead counsel during trial did not warrant presumption of prejudice); Hoffman, 733 F.2d at 602 (attorney's suspension from practice by his home state bar during federal district court trial not cause for per se finding of ineffectiveness); United States v. Sielaff, 542 F.2d 377, 380 (7th Cir. 1976) (subsequent disbarment of petitioner's counsel "was irrelevant to his performance at petitioner's trial"); Hernandez v. Wainwright, 634 F. Supp. 241, 246 (S.D. Fla. 1986) (trial counsel's disbarment five years after defendant's conviction was not sufficient to find that counsel had rendered ineffective assistance at trial absent showing of direct nexus with prejudice at trial), aff'd, 813 F.2d 409 (11th Cir. 1987).

If courts were to accept the rule for which Vance contends, trial judges would no longer be able to rely on the

12

existence of de jure authority to practice law.  Their only recourse would be to conduct an in-depth inquiry into the moral character of defense counsel in each and every case.  Given the difficulty of marshalling the relevant information, even then, they would have little assurance that the particular criminal case before them could be tried to an unimpeachable judgment.

We find this case readily distinguishable from United States v. Novak, 903 F.2d 883 (2d Cir. 1990), upon which Vance principally relies.  In Novak, the defendant had been represented by a person who had fraudulently gained admission to the New York Bar by applying for an exemption from the bar exam requirement which was intended for those whose legal studies were interrupted by military service and for which he was ineligible.  The court found a per se Sixth Amendment violation.  Because defense counsel had never been validly licensed to practice in any state and, thus, "[h]is competence to practice law had never been tested," the court found the situation there to be like that of an imposter.  Novak, 903 F.2d at 890.  In this case, Potack had been admitted to practice in California and had demonstrated his mastery of Pennsylvania law and practice.  While he had previously engaged in professional misconduct unrelated to Vance's case, that does not cause us to question what seems readily apparent from a review of the record -- Potack exposed the government's case to "the crucible of meaningful adversarial testing."  Cronic, 466 U.S. at 656.

Nor does Vance's allegation of a conflict of interest undermine our confidence in the integrity of the proceedings

13

before the Court of Common Pleas.  Vance suggests that Potack's self-interest conflicted with Vance's interest in mounting a vigorous and aggressive defense.  His theory is that Potack may have refrained from conducting such a defense for fear of prompting an investigation into his (Potack's) background.

Vance is correct in pointing out that some conflicts of interest have been found to justify invocation of the per se violation rule.  "Prejudice is presumed," however, "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"  Strickland, 466 U.S. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 350 (1980)) (emphasis supplied).  More specifically, the defendant must identify something that counsel chose to do or not do, as to which he had conflicting duties, and must show that the course taken was influenced by that conflict.  See Burger v. Kemp, 483 U.S. 776 (1987); United States v. Gambino, 788 F.2d 938 (3d Cir.), cert. denied, 479 U.S. 825 (1986).  If the defendant carries this burden, the requisite degree of risk of prejudice is established and the defendant does not have to demonstrate that the result of his trial would have been different absent the conflict.  Strickland, 466 U.S. at 692 (citing Cuyler v. Sullivan, 446 U.S. at 349-50).

In the cases relied upon by Vance, Novak and Solina, counsel was not properly licensed to practice law.  Accordingly, the representation of the defendant was itself a crime -- i.e., the unauthorized practice of law.  In these circumstances, a

14

vigorous and successful defense of the client might well influence the exercise of the prosecutor's discretion in the future should the absence of a license subsequently come to light.  Novak, 903 F.2d at 890; Solina, 709 F.2d at 164.  While we are not certain that the defendants in these cases satisfied the criteria set forth by the Supreme Court in its conflicts of interest jurisprudence, we can understand the concerns that led these courts to the result reached.[2]

Courts have reached a different result, however, where a conflict of interest has been alleged involving an attorney who was authorized to practice law, but was the subject of a professional misconduct investigation.  In these circumstances, the courts have been unwilling to find a per se violation based on the theory that the defense of the criminal case would be prejudiced by the attorney's desire not to alienate the prosecutor or the court.  See Waterhouse, 848 F.2d at 383 (attorney had no reason to fear that vigorous defense would expose him to unrelated charges of misappropriation of client

---

[2]  This court had a similar concern in United States v. DeFalco, 644 F.2d 132 (3d Cir. 1979), which involved a similar, but more egregious, conflict.  There we applied the per se violation rule in a case where the defendant's lawyer, while litigating the defendant's appeal, had been indicted and pleaded guilty in the same district court the defendant had been convicted in and had negotiated a plea bargain for himself with the same United States Attorney's Office that had tried the defendant's case.  We were concerned about the direct conflict between counsel's duty to persuade the appellate court of error in the defendant's trial proceedings and his self-interest in not alienating the prosecutor with whom he was negotiating and the court by which he would be sentenced.  Our holding there was a narrow one, expressly limited to these facts, and is not implicated here. Id. at 136-37.

15

funds); Mouzin, 785 F.2d at 699 (attorney's disbarment from appellate court, without more, does not place attorney into adversarial position with defendant being tried in district court); Roach, 757 F.2d at 1479-80 (conflict of interest should not be presumed absent showing that investigation into attorney's conduct by licensing authorities simultaneously with attorney's representation of defendant impaired attorney's ability to defend client); Hoffman, 733 F.2d at 602 (attorney's suspension from his home state bar and his failure to inform federal district judge did not place him "in an adversarial position relative to" the defendant). Where, as here, the professional misconduct charge and the criminal defense are wholly unrelated, nothing done or foregone in the criminal defense can effect the result in the ethics proceedings and we perceive no actual conflict between the lawyer and his client. If anything, we believe a lawyer under fire for past misconduct is likely to be highly motivated to give the best professional representation possible. Waterhouse, 848 F.2d at 383.

In this case, Potack was authorized to practice law and his representation of Vance was not a crime. Accordingly, he had no fear of subsequently being the subject of a judgment by Pennsylvania's prosecuting authorities. Moreover, the petition to revoke Potack's license was filed well before Vance's trial began and his plea was entered. The facts concerning Potack's past were thus already known to the Pennsylvania courts and disciplinary authorities before these critical phases of the proceeding. Even with respect to the earlier part of the

16

representation, however, we perceive no actual conflict.  We believe a lawyer who wishes to minimize his chances of coming to the attention of the disciplinary authorities has every reason to render the best possible professional representation.

## III.

Vance's lawyer had previously violated his professional responsibilities on a number of occasions.  Those violations were unrelated to Vance's defense, however, and the record does not suggest any similar defalcation here.  To the contrary, the record indicates that Potack rendered a professionally competent and vigorous performance.  While it is, of course, _possible_ that Potack did not live up to his professional responsibilities to Vance in some way unreflected in the record, the potential for prejudice to Vance under the circumstances of this case is not sufficiently great to place this case in the same category with the cases that have applied a _per se_ rule.  The judgment of the district court will be affirmed.