

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-1997

# Johnson v. Rosemeyer

Precedential or Non-Precedential:

Docket 96-1861

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"Johnson v. Rosemeyer" (1997). *1997 Decisions.* Paper 130.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/130

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 13, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1861

CURTIS JOHNSON,

Appellant

v.

FREDERICK ROSEMEYER, WARDEN, OF THE STATE
CORRECTIONAL INSTITUTE - GREENSBURG; THE
DISTRICT ATTORNEY OF PHILADELPHIA COUNTY; THE
ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 95-07365)

Argued May 21, 1997

BEFORE: GREENBERG, ROTH, and WEIS, Circuit Judges

(Filed: June 13, 1997)

Steven N. Yermish (argued)
Caplan & Luber
40 Darby Road
Paoli, PA 19301

 Attorneys for Appellant

Donna G. Zucker (argued)
Chief, Federal Litigation
Deborah Fleisher
Ronald Eisenberg
Deputy District Attorney
Arnold H. Gordon
First Assistant District
 Attorney
Lynn Abraham
District Attorney
Office of District Attorney
1421 Arch Street
Philadelphia, PA 19102

 Attorneys for Appellees

**OPINION OF THE COURT**

GREENBERG, Circuit Judge.

I. INTRODUCTION

Appellant, Curtis Johnson, appeals from an order entered on August 29, 1996, in this habeas corpus action following his conviction for aggravated assault in the Common Pleas Court of Philadelphia County, Pennsylvania. The district court denied Johnson's petition in a comprehensive memorandum opinion accompanying the order. Johnson v. Rosemeyer, Civ. No. 95-7365 (E.D. Pa. Aug. 27, 1996). Johnson raises two issues on this appeal. First, he contends that "the district court erred in failing to grant habeas relief where the state trial court's jury instruction[s] on justification [were] erroneous and thus violated [his] right to due process." Br. at 11. Second, he urges that he "was denied due process because of the trial court's incomplete and erroneous jury instruction[s] on aggravated assault." Br. at 34. After a careful review of the matter, we have concluded that we should affirm the district court's order. We confine our discussion to the court's instructions to the jury on the justification issue, as Johnson's contention with respect to the aggravated assault

2

instructions clearly affords no basis for habeas corpus relief.

## II. FACTS AND PROCEDURAL HISTORY

There is no dispute regarding the basic facts in this case. On November 27, 1988, Johnson, a Philadelphia police officer, shot and seriously wounded James Cahill while off duty. This unfortunate incident arose from a dispute between Johnson and Cahill's mother, who was a tenant in an apartment building Johnson owned. At his trial on the aggravated assault charge in the state court, Johnson testified that Cahill assaulted him with a shovel, and that he then shot Cahill after Cahill attempted to escape when Johnson tried to arrest him.

As Johnson explains in his brief, his "sole defense" at trial was that he "was justified in shooting Cahill in order to prevent his escape." Br. at 11. Pennsylvania law sets forth the circumstances in which a law enforcement officer may use force in making an arrest in 18 Pa. Cons. Stat. Ann. § 508 (West 1983) ("section 508"):

 Use of force in law enforcement (a) Peace officer's use of force in making arrest. --

 (1) A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest. However, he is justified in using deadly force only when he believes that such force is necessary to prevent death or serious bodily injury to himself or such other person, or when he believes both that:

 (i) such force is necessary to prevent the arrest from being defeated by resistance or escape; and

 (ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon, or otherwise indicates

3

that he will endanger human life or inflict serious bodily injury unless arrested without delay.

In recognition of Johnson's contention that section 508 justified his use of force, the trial court instructed the jury that a police officer:

is justified using deadly force only when he believes that such force is necessary to prevent the death or serious bodily injury to himself or another or when he believes that both are present, these two factors are present and such force is necessary to prevent the arrest from being defeated by resistance or escape, and the person to be arrested has committed or attempted to commit a forcible felony under the act.

App. at 323. The court defined aggravated assault as an attempt to cause serious bodily injury to another or intentionally causing serious bodily injury to another in accordance with 18 Pa. Cons. Stat. Ann. § 2702 (West Supp. 1997). App. at 321.

During its deliberations, the jury sent a question to the court asking whether an arresting police officer was "obliged to use deadly force to shoot against a fleeing felony [sic] under all circumstances or can an alternative measure be taken to secure the arrest." App. at 348-49 (emphasis in original). The court responded as follows:

 All right, we said that an officer is justified in using any force which he believes to be necessary to effectuate an arrest, any force generally, that's the general rule but he must use only that amount of force that is necessary to accomplish the arrest. Now, when it comes to the use of deadly force, deadly force being force that is likely to cause serious bodily injury or death, he is justified in using deadly force only when he believes that such force is necessary to prevent death or serious bodily injury to himself or such other person or when he believes both, one, that such force is necessary to prevent the arrest from being defeated. An arrest being defeated meaning that, being not effectuated, that he could not make the arrest otherwise, and the person to be arrested has committed or attempted a forcible felony, and is fleeing

4

therefrom. That's the only thing I can tell you. It is the standard. You utilize it. I could answer your question yes or no but I can't without interfering with your obligation to make a determination of the facts. Again the general rule is that a police officer can use force to effectuate an arrest and that amount that is necessary to make that arrest. He can use only that force that is necessary, however when he has to use deadly force, then he must meet special conditions: that he must believe that he cannot effectuate the arrest, that is the arrest becomes defeated unless he can use deadly force of [sic] a fleeing felon, all right?

App. at 349-50. The jury subsequently convicted Johnson.

After the trial court denied Johnson's post-trial motions and sentenced him, Johnson appealed to the Superior Court, a Pennsylvania intermediate appellate court. Johnson contended on appeal, as he has in these habeas corpus proceedings, that section 508 establishes three separate and distinct circumstances in which a police officer may use force to effectuate an arrest: (1) when the police officer believes that such force is necessary to prevent death or serious bodily injury to himself or another person; (2) when necessary to prevent the arrest from being defeated by resistance or escape and the person to be arrested has committed or attempted a forcible felony; or (3) when necessary to prevent the arrest from being defeated by resistance or escape and the person attempting to escape possesses a deadly weapon or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay. Johnson further contended in the Superior Court that the trial court's instructions to the jury, even as the court amplified the instructions in response to the jury's question, did not conform with the above law.

In an unpublished opinion the Superior Court rejected Johnson's contention, as well as other issues he raised, and thus affirmed his conviction. Commonwealth v. Johnson, 588 A.2d 561 (Pa. Super. Ct. 1990) (table). That court held that the instructions, though ambiguous, did not require that it grant Johnson a new trial because Johnson was not entitled to a jury charge on justification, and

5

because the trial court in any event cleared up any confusion with its supplemental instructions. Commonwealth v. Johnson, slip op. at 5. In explaining why Johnson was not entitled to a justification charge, the court held that section 508 allows a police officer to use deadly force in effectuating an arrest only if the person to be arrested has committed a forcible felony and possesses a dangerous weapon, or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested immediately. Id.

The Superior Court made particular reference to Johnson's argument indicating:

Johnson would have us read § 508 disjunctively, thereby negating the element of endangerment where a `forcible felon' is pursued. This we cannot do. The phrase `committed or attempted a forcible felony or is attempting to escape' has, as a necessary condition, the requirement of `[possession of] a deadly weapon, or [other indication] that he will endanger human life or inflict serious bodily injury unless arrested without delay.' The statute is not to be read to allow deadly force to be used against a person who poses no threat to human life or safety. . . .

Id. Johnson unsuccessfully sought allocatur from the Supreme Court of Pennsylvania and thereafter he unsuccessfully sought post-conviction relief in the state courts.

Johnson, who had exhausted his state remedies, subsequently instituted these proceedings in the district court under 28 U.S.C. § 2254. The district court referred the matter to a magistrate judge who filed a report and recommendation that the district court grant the petition on the ground that the trial court's instructions to the jury on justification were erroneous and deprived Johnson of due process of law. The magistrate judge, however, recommended that, to the extent that Johnson based the petition on a claim that erroneous jury instructions on aggravated assault denied him due process of law, the district court should deny the petition. The magistrate judge also recommended that the district court deny the

6

petition insofar as Johnson sought relief on grounds which he does not raise on this appeal and which we therefore need not detail. Both Johnson and the respondents filed objections to the report and recommendation.

The district court decided the case in the comprehensive memorandum opinion to which we referred at the outset of this opinion. The district court set forth the background of the matter and then indicated, citing Kontakis v. Beyer, 19 F.3d 110, 114 (3d Cir. 1994), that it could grant a petition for a writ of habeas corpus only when there has been a violation of the Constitution, laws, or treaties of the United States. Johnson, slip op. at 4. The court stated that it would make a de novo review of the magistrate judge's findings and recommendation insofar as the parties objected to them. Id.

The court then set forth Johnson's contentions with respect to the meaning of section 508 and further noted the magistrate judge's conclusion that Johnson's contentions with respect to its meaning were correct. The court said that it is "axiomatic that federal habeas courts do not sit to re-examine state court determinations of state law," citing Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991). Johnson, slip op. at 8. While the court recognized, quoting Mullaney v. Wilbur, 421 U.S. 684, 691 n.11, 95 S.Ct. 1881, 1886 n.11 (1975), that a federal court "may re-examine a state court's interpretation of its law if that interpretation appears to be an `obvious subterfuge to evade consideration of a federal issue,' " it pointed out that Johnson did not allege that there had been such an evasion. Johnson, slip op. at 8.

The district court stated that the case was unusual "because the opinion in question was issued by Pennsylvania's intermediate appellate court and speaks to a matter that the Pennsylvania Supreme Court has not addressed directly." Johnson, slip op. at 8-9. The district court then pointed out that the magistrate judge cited West v. American Tel. and Tel. Co., 311 U.S. 223, 61 S.Ct. 179 (1940), and certain courts of appeals opinions for the proposition that a "federal habeas court may, in rare cases, disregard the decision of a state's intermediate appellate court where the federal court is convinced that the highest

court of the state would rule to the contrary." Johnson, slip op. at 9. See Watson v. Dugger, 945 F.2d 367, 369 (11th Cir. 1991); Olsen v. McFaul, 843 F.2d 918, 928-29 (6th Cir. 1988); Sanderson v. Rice, 777 F.2d 902, 905 (4th Cir. 1985).

The district court said that in Barry v. Brower, 864 F.2d 294 (3d Cir. 1988), we faced a situation not unlike that here. The court explained, quoting Barry, 864 F.2d at 298, that we held there that "a federal habeas court is bound by a state court's determination of state substantive law and `may not substitute its interpretation of state law for that of the state court whose action it is reviewing.' " Johnson, slip op. at 9-10. The district court then quoted Barry, 864 F.2d at 298 n.5, with respect to the distinction we drew there between a federal court's power to determine state law in a habeas corpus case and its power to determine state law in a diversity case, the court being freer to determine state law in the latter situation.

The court then acknowledged that there is support for Johnson's interpretation of section 508 in Dolan v. Golla, 481 F. Supp. 475, 480 (M.D. Pa. 1979), aff'd , 633 F.2d 209 (3d Cir. 1980) (table), and Phillips v. Ward, 415 F. Supp. 976, 979 (E.D. Pa. 1975), as well as in the legislative history of section 508 which is based on section 3.07 of the Model Penal Code. See Model Penal Code § 3.07 comment 3(c). Johnson, slip op. at 10. Nevertheless, the district court indicated that it did not sit as a "super court of appeals" to pass judgment on matters of state law and that "[g]iven an authoritative decision of Pennsylvania's intermediate appellate court [it] decline[d] to speculate about the direction Pennsylvania law will take in the future." Johnson, slip op. at 11.

Overall, the district court regarded itself as bound by the Superior Court opinion on Johnson's direct appeal and thus it rejected his argument to the extent he predicated it on his contention that the trial court's jury instructions on justification were erroneous. The district court also rejected Johnson's argument predicated on his contention that the trial court's jury instructions on aggravated assault were incomplete and erroneous as well as the other arguments he advanced. We, however, will not describe its opinion in

8

detail on these points because we summarily reject Johnson's argument based on the aggravated assault instructions and he does not pursue the other points on this appeal.

III. DISCUSSION

a. The standard of review

On this appeal, Johnson reiterates the position he took in the district court that the trial court's jury instructions with respect to justification were erroneous and that the Superior Court opinion is not conclusive in the federal courts on the meaning of section 508. In view of the procedural posture of the case in which the district court based its decision on the record of the state court proceedings, rather than on facts found after an evidentiary hearing, we make a plenary review of the district court's order. See Kontakis v. Beyer, 19 F.3d at 113. We note that the parties have briefed this appeal without reference to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), even though the district court decided the case after April 24, 1996, the effective date of that Act, and we further note that the district court did not mention that Act. In these circumstances, we, too, will decide the case without considering that Act, as we conclude that under prior law we should affirm the order of the district court and we can conceive of no basis for a conclusion that the Act enhanced Johnson's position.

b. The instructions on justification raise only a state law issue.

At the outset of our discussion, we point out that there is an answer, based on a point on which the parties have not centered their briefs, to Johnson's contention that he is entitled to relief because of the allegedly erroneous jury instructions pertaining to his justification defense. In Estelle v. McGuire, 502 U.S. at 67-68, 112 S.Ct. at 480, the Supreme Court, after indicating that it is not the province of a federal habeas corpus court to re-examine state court determinations on state law questions, set forth that "a federal court is limited to deciding whether a conviction

9

violated the Constitution, laws, or treaties of the United States." Thus, we have stated that "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3d Cir. 1992).

Accordingly, it is not surprising that Johnson recognizes that he cannot obtain relief simply by demonstrating that the state trial court and the Superior Court made a mistake of state law with respect to the jury instructions on the justification issue. Therefore, he attempts to predicate his argument on the Constitution by contending that the allegedly erroneous instructions to the jury on the justification issue denied him due process of law because it deprived him of an opportunity to present his defense. He explains that "the trial court's instructions unconstitutionally altered the Commonwealth's burden to disprove all elements of [his] justification defense beyond a reasonable doubt. By adding elements to the defense, the trial court made it easier for the Commonwealth to disprove Johnson's sole defense at trial." Br. at 32.

In considering Johnson's contention, we realize that under Pennsylvania law a conviction for aggravated assault requires a showing that the defendant acted with malice, Commonwealth v. Hickson, 586 A.2d 393, 396 (Pa. Super. Ct. 1990), and that if the defendant acts with justification he will not have acted with malice. Commonwealth v. Rife, 312 A.2d 406, 410 (Pa. 1973). We further recognize that if there was a mistake of state law in this case, the mistake, as Johnson urges, arguably relieved the state of the burden of proving an element of the offense, i.e., malice. We also recognize that even though the parties refer to justification as a defense it is something more, as by demonstrating the absence of malice the justification may negate an element of the offense. See Engle v. Isaac, 456 U.S. 107, 122, 107 S.Ct. 1558, 1569 (1982).

Yet the difficulty with Johnson's argument is that, even if the state courts made a mistake of state law which prejudiced Johnson by altering the proofs necessary to

10

support a conviction, to obtain habeas corpus relief he must demonstrate that the mistake deprived him of a right which he enjoyed under the Constitution, laws, or treaties of the United States. Thus, errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause.

In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. See McMillan v. Pennsylvania, 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2515-16 (1986).

It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it.

Our opinion in Humanik v. Beyer, 871 F.2d 432 (3d Cir. 1989), a habeas corpus case involving a prisoner in state custody following a New Jersey state conviction,

11

demonstrates this point well. In Humanik we were concerned with New Jersey's diminished capacity statute, which provides that evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether the defendant had a state of mind which is an element of the offense. The New Jersey diminished capacity statute at the time of Humanik's trial provided that "[m]ental disease or defect is an affirmative defense which must be proved by a preponderance of the evidence." N.J. Stat. Ann. § 2C:4-2 (West 1995) (note) (section "2C:4-2"); see Humanik, 871 F.2d at 434. After Humanik's trial, the Supreme Court of New Jersey in other cases construed section 2C:4-2 to require a defendant relying on a diminished capacity argument to prove by a preponderance of the evidence that he suffers from a mental disease or defect. The Supreme Court of New Jersey held that if the defendant did so, the state was required to prove beyond a reasonable doubt that the disease or defect did not negate the state of mind which is an element of the crime, i.e., that the defendant acted purposely or knowingly despite his mental disease. Humanik, 871 F.2d at 439.

In Humanik, we held that the instructions to the jury were erroneous under New Jersey law because they did not anticipate accurately the New Jersey Supreme Court's later explanation of the contrasting burdens of proof on the diminished capacity issue. Id. at 442. We then held that even if we had concluded that the jury instructions complied with New Jersey law, we nevertheless would grant the writ because the instructions placed a burden of proof of an element of the offense, that the defendant acted purposefully or knowingly, on the defendant. Id. at 442-43. We reached our conclusion because in In re Winship, 397 U.S. 358, 90 S.Ct. 1068 (1970), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment required proof beyond a reasonable doubt of every fact necessary to constitute the crime charged.

Humanik, then, was a case in which, whether the jury instructions were correct or not under state law, the petitioner, Humanik, was entitled to relief because the instructions violated his constitutional rights which were derived from a federal source. Yet in Humanik we did not

12

undertake to determine whether the New Jersey courts properly identified the elements of the offense charged in the state indictment, in particular the need for proof of the defendant's intent. Rather, we concerned ourselves with an issue under the Constitution, the allocation of the burden of proof on the elements of the offense as defined by the Supreme Court of New Jersey.

Accordingly, in Humanik, even though we found that the state trial court's instructions to the jury did not correctly reflect New Jersey law, we did not, without more, find that the petitioner was entitled to habeas corpus relief. We reached the conclusion that Humanik was entitled to such relief only when we applied a federal source of law, namely, In re Winship, and then determined that the jury instructions did not satisfy federal law.[1]

Johnson's problem is that he cannot point to a federal requirement that jury instructions on the elements of an offense when justification is in issue include particular provisions, nor can he demonstrate that the jury instructions deprived him of a defense which federal law provided to him. In short, he cites no authority for the proposition that federal law entitled him to the jury instructions on justification that he contends should have been given. The closest he comes is to contend that his interpretation of section 508 is consistent with Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694 (1985), which determined when a police officer constitutionally could use force to effectuate an arrest. Br. at 26. But the Supreme Court opinion in Garner did not establish a federal right to particular jury instructions to a jury in a state criminal case when justification is in issue. Rather, the case established the circumstances in which a state may authorize a police officer to use deadly force to effectuate an arrest. Therefore, Johnson's petition differs from Humanik's whose petition successfully identified an error of federal law at his state trial, i.e., the unconstitutional placing of a burden of proof of an element of the offense on him. But this case, unlike Humanik, does not include a Winship

_____

1. The New Jersey legislature has amended section 2C:4-2 to comply with our holding in Humanik.

13

issue, inasmuch as the trial court charged the jury that the state had to disprove the justification defense beyond a reasonable doubt. Accordingly, the district court correctly denied Johnson's petition because the error that he asserts existed in the jury instructions on the justification issue implicates only state law issues.

Under the foregoing analysis, it does not matter whether we are bound by the Superior Court opinion because even if we rejected that opinion and agreed with Johnson that the trial court and the Superior Court made a mistake in construing state law, we would deny his petition inasmuch as the jury instructions did not violate any federal right which he possessed. Furthermore, even if we found that the trial court and the Superior Court were correct under state law, we would grant Johnson relief if we found that the jury instructions violated his federal rights. Thus, it does not matter whether we re-examine the state law issue because, regardless of the result of the re-examination, we cannot grant Johnson relief.

In reaching our result, we have not lost sight of Hicks v. Oklahoma, 447 U.S. 343, 100 S.Ct. 2227 (1980), in which a defendant based a due process claim on an error in jury instructions. In Hicks, the Oklahoma state trial court instructed the jury that if it found the defendant guilty of distributing heroin, it must sentence him to a 40-year term of imprisonment as an habitual offender. Id. at 345, 100 S.Ct. at 2228-29. The problem with the instructions in Hicks was that after the trial, the Oklahoma Court of Criminal Appeals declared the mandatory sentencing statute unconstitutional in another case so that under the applicable valid law the jury could have sentenced the defendant to a term of not less than ten years in prison. See Thigpen v. State, 571 P.2d 467 (Okla. Crim. App. 1977). Thus, the erroneous instruction forced the jury to sentence the defendant in Hicks to a term four times longer than it was required to impose. Yet on the defendant's direct appeal, the Oklahoma Court of Criminal Appeals affirmed his sentence, finding that he was not prejudiced by the impact of the invalid statute, as his sentence was within the range that the jury could have imposed in any event. The Supreme Court granted the defendant's petition for

14

certiorari and vacated the judgment on due process grounds.

In Hicks, the state court declared that the statute in question was unconstitutional and thus the federal courts did not make a determination of state law. Rather, in Hicks the Supreme Court held that the error was not harmless and that due process of law required that the case not be viewed as involving only state law concerns. Accordingly, Hicks differs fundamentally from this case, as here Johnson has invited the federal courts to make state law determinations. Furthermore, even though the error in the jury instructions in Hicks can be seen as an error of state law in one sense, the instructions may be viewed as having in themselves violated federal law, as the Oklahoma Court of Criminal Appeals in Thigpen invalidated the mandatory sentencing statute for vagueness without clearly indicating whether it was doing so based on federal or state constitutional grounds.2

Of course, Hicks involved an unusual situation which the Supreme Court concluded required due process treatment. But the Court has not applied Hicks to mean that every error of state law affecting the outcome of a state criminal proceeding would be cognizable as a due process claim. If the Court did so hold, then the district courts in habeas cases effectively would become state appellate courts one rung above the state courts of last resort. The Court has made it clear that the district courts do not have that function. Furthermore, in Hicks the jury was the sentencing authority and thus was in the same position as a judge who sentenced a defendant to a mandatory term of imprisonment without recognizing that the law did not require the imposition of that term. We think that a judicial error of that kind would violate a defendant's due process protections and we see no reason why a different result would be reached merely because the jury imposes the sentence.

_____

2. The Oklahoma court probably intended to void the statute on Fourteenth Amendment grounds, as it annexed an advisory opinion to its opinion which found the sentencing statute invalid under that amendment.

15

c. The Superior Court opinion is conclusive.

We do not base our opinion exclusively on the foregoing analysis, as the parties have not focused their arguments on the question of whether Johnson's challenge to the jury instructions involves state law issues not cognizable in these proceedings. Indeed, the appellees contend only in a conclusory fashion within a footnote in their brief that Johnson raises only issues of state law not entitling him to federal relief. Br. at 20 n.7. Thus, we affirm the order of the district court for the additional reason that we agree with it that the Superior Court opinion on Johnson's direct appeal is binding, the result being that we cannot find that the trial court made an error of law in the jury instructions under section 508. In reaching this conclusion, we discuss three of our opinions that we list in the order in which we decided them, Barry, 864 F.2d 294, Humanik, 871 F.2d 432, and Vance v. Lehman, 64 F.3d 119 (3d Cir. 1995), cert. denied, 116 S.Ct. 736 (1996).

In Barry, the petitioner sought federal habeas corpus relief following his New Jersey conviction on charges involving the distribution of dangerous controlled substances. The petitioner had sought to appeal from his conviction to the Appellate Division of the New Jersey Superior Court, but he was unable to afford counsel to represent him even though he did have certain assets. Thus, he did not perfect his appeal. Eventually, however, the public defender found that the petitioner was eligible for representation by its office so it entered an appearance for him and moved to reinstate his appeal. The Appellate Division denied the motion, as it held that under state law the petitioner's property holdings rendered him ineligible for the services of the public defender. After the Supreme Court of New Jersey declined to review the Appellate Division's order, the petitioner sought federal habeas corpus relief. The district court granted relief on the ground that the Appellate Division's order was an interference with the public defender's determination that the petitioner was eligible for representation and was unauthorized by state law. Barry, 864 F.2d at 298.

On the appeal from the district court's order granting the writ, we held that the petitioner was entitled to habeas

16

corpus relief on a different basis from that on which the district court granted it. In reaching our decision, we expressly disapproved the district court's action in concluding that the Appellate Division had erred under state law, though we recognized that the district court's holding was based "on a plausible interpretation of state law." Id. We held that "the district court is bound by the state court's determination of state substantive law" and that a "district court may not substitute its interpretation of state law for that of the state court whose action it is reviewing." Id. We gave the following explanation of the powers of a federal habeas corpus court with respect to state law issues:

We have found no decision of the New Jersey Supreme Court compelling the rationale we attribute to the Appellate Division or the rationale the district court believes state law requires. We do not believe that this uncertainty leaves the district court free to predict what the New Jersey Supreme Court would do. In a diversity case, for example, federal courts act on cases which have not been before the state court for decision and must determine, and often predict, what substantive law to apply. In habeas cases, by contrast, district courts act after the state court has decided the state law and applied it to the same record that is before the habeas court. To permit federal courts to speculate about the direction state law may take in the face of an authoritative final decision of a state court in the same case would directly interfere with the state's ability to decide the meaning of its own law.

Id. at 298 n.5. In view of Barry's holding with respect to the binding effect of state court opinions on state law, there can be no doubt that, if standing alone, Barry would have compelled the district court in this case to treat the Superior Court decision as an authoritative and binding determination of state law with the result to deny Johnson's petition to the extent that he predicated it on the justification instructions.3

_____

3. Of course, even if Barry had adopted the district court's understanding of state law, in our view that adoption would not have been the basis for habeas relief as the mistake of state law by a state court would not have implicated a federal issue.

17

But Barry does not stand alone, for Humanik followed shortly thereafter. In that case, Humanik, in addition to making the constitutional argument we described above, contended that section 2C:4-2 was being applied unconstitutionally to him, as its provision placing the burden of proof on a defendant to establish that he had a mental disease or defect by a preponderance of the evidence was added after he committed his offense, though before his trial. Humanik regarded this application of the statute as a violation of the ex post facto clause. We rejected this argument on the ground that the Appellate Division found that the amendment did not change "existing law relative to the defendant's burden of proving mental disease or defect." Humanik, 871 F.2d at 436.

In Humanik we quoted Mullaney v. Wilbur, 421 U.S. at 691, 95 S.Ct. at 1886, for the point that in federal habeas corpus cases "state courts are the ultimate expositors of state law [and federal courts are] bound by their constructions except in rare circumstances." Humanik, 871 F.2d at 436. We then went on and analyzed state law and concluded that the Appellate Division had made a "reasonable" interpretation of New Jersey law before the amendment of section 2C:4-2. Thus, Johnson suggests that we should determine whether the Superior Court's decision with respect to the instructions to the jury on justification was reasonable.

More recently in Vance, 64 F.3d 119, we once again dealt with the effect of a decision of an intermediate state court of appeals in a federal habeas corpus case, the court being, as here, the Superior Court of Pennsylvania. In Vance, the petitioner claimed that he had been denied effective representation of counsel when he was convicted in a Pennsylvania trial court because his attorney had procured his admission to the state bar through material misrepresentations so that his admission was void ab initio. Thus, in the petitioner's view, he was not represented by counsel at the trial.

In the course of our opinion we pointed out that the Superior Court held that when the attorney represented the petitioner at the trial he was authorized to practice law in Pennsylvania and that the Supreme Court of Pennsylvania

18

"declined to review that decision and [the petitioner] has pointed to nothing suggesting that that court would reach a different result were it to consider the issue." Vance, 64 F.3d at 123. We indicated that in these circumstances, "we accept the holding of the Superior Court as the law of Pennsylvania," id., citing West v. American Tel. & Tel. Co., 311 U.S. at 236-37, 61 S.Ct. at 183, as support for our holding. Johnson sees Vance as giving us authority to review the decision of the Superior Court because West held that:

Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.

West, 311 U.S. at 237, 61 S.Ct. at 183 (citations omitted).

Barry, Humanik, and Vance, of course, are not incompatible because in all three cases we followed the opinion of the state intermediate appellate court with respect to its determination of state law. Yet there is no denying that the language and reasoning of the three cases is not completely consistent and certainly Vance would suggest that the federal courts in habeas corpus cases have broader authority to decline to follow opinions of a state intermediate appellate court than Barry recognized.

We could determine the binding effect of a decision of an intermediate state court of appeals in a habeas corpus case by holding that Barry, as the earliest of the three germane opinions, is determinative under our Internal Operating Procedures. See Third Circuit I.O.P. 9.1. But we prefer, instead, to analyze the cases so as to clarify the law on the point. We think that the implications of Vance are too broad because Vance relied on West, which was a civil diversity of citizenship case. A federal court in a diversity case takes

19

the place of a state court in an original proceeding only because of the citizenship of the parties and the amount in controversy. On the other hand, in a habeas corpus case a federal court has a role secondary to a state court and, only after state proceedings, determines whether a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Thus, in a habeas corpus case, a federal court, unlike a federal court in a diversity of citizenship case, does not substitute for a state court. Accordingly, it is appropriate and consistent with Mullaney v. Wilbur that a federal court in a habeas corpus case be most circumspect in re-examining state court decisions. We also point out that while we are well aware that a federal habeas corpus proceeding is not an appeal from the underlying state proceeding, see, e.g., Rimmer v. Fayetteville Police Dep't, 567 F.2d 273, 276-77 (4th Cir. 1977), it is consistent with the Rooker-Feldman doctrine, which limits the scope of federal review of state court proceedings, to confine narrowly the scope of federal review in habeas corpus cases of state court determinations of law. See Blake v. Papadakos, 953 F.2d 68, 71-72 (3d Cir. 1992).

On the other hand, we would be reluctant to hold that a federal district court, no matter what the circumstances, always must follow an intermediate appellate state court opinion announcing the state law in earlier proceedings involving the petitioner. After all, it is possible that a state supreme court might hold that the intermediate appellate court had been wrong in an earlier case. In such a situation, it hardly would do violence to federal-state relations if a district court declined to apply the overruled decision of the intermediate appellate court even if it had not been reversed. Indeed, quite the opposite would be true, for considerations of comity would suggest that the district court should follow the supreme court opinion.

In the end, then, we conclude that only in extraordinary and compelling circumstances should a federal district court in a habeas corpus case decline to follow the opinions of a state intermediate court of appeal with respect to state law rendered in earlier proceedings involving the petitioner. This case does not even approach that exacting standard,

20

as we have here nothing more than an argument over the meaning of section 508. We acknowledge that Johnson makes a plausible, indeed even a strong case, that the Superior Court erred in construing section 508, although it is also evident that on the facts as developed at trial the trial court's supplemental instructions to the jury may have cured any error it originally may have made in the jury instructions. Nevertheless, even if the Superior Court erred and even if we would have granted a new trial had we been entertaining Johnson's direct appeal, Johnson's showing does not satisfy the criteria justifying a federal court to depart from that Superior Court decision. Consequently, the district court properly denied Johnson's petition for a writ of habeas corpus.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the order of August 29, 1996.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

21